## The Frankford and Philadelphia Passenger Railway Company *versus* The City of Philadelphia.

| 58 | 119 |
| 129 | 199 |
| . 58 | 119 |
| 177 | 381 |
| 58 | 119 |
| f 199 | 402 |
| 58 | 119 |
| 24 SC ² | 82 |
| 26 SC ¹ | 360 |
| 58 | 119 |
| 29 SC ² | 165 |
| 58 | 119 |
| 32 SC ³ | 500 |

1. A grant to a corporation to carry passengers in cars over the streets of a city does not necessarily involve exemption from liability to municipal regulation. The right is neither greater nor less than a natural person possesses.

2. When a corporation is authorized to carry on a specified business within a municipal corporation, it is intended that the business shall be conducted under the restrictions, &c., which govern others transacting the same business.

3. A reasonable regulation of the use of a privilege is not a denial of the right.

4. Corporations chartered to do business in a city are to be regarded as inhabitants of the city and, unless exempted, are subject to its ordinances.

5. Liability to restrictions, &c., is involved in the designation of the place where the corporation's business is to be carried on.

6. The right to construct and own a railway neither enlarges nor diminishes the right to run cars and carry passengers.

7. An ordinance of Philadelphia requiring passenger cars to be numbered, and to be licensed on paying a stipulated sum for each car, is a police regulation.

8. Such ordinance may be enacted under the Act of April 15th 1850, authorizing the councils to pass ordinances for the regulation of omnibuses, &c.

9. Whether the ordinance could be enacted under the general power to councils to ordain such ordinances, &c., as shall be necessary for the government and welfare of the city? *Dubitatur.*

February 6th and 7th 1868. Before Thompson, C. J., Strong, Agnew and Sharswood, JJ. Read, J., at Nisi Prius.

Error to the District Court of *Philadelphia*: to July Term 1867, No. 183.

This was an amicable action and case stated, filed March 23d 1867, in which the Frankford and Philadelphia Passenger Railway Company were plaintiffs and the City of Philadelphia defendant.

The facts agreed on in the case were that the plaintiffs were a corporation under Act of April 10th 1862 (Pamph. L. 393) and its supplement of March 21st 1865 (Pamph. L. 499); in pursuance of their powers, they agreed with the Frankford and Bristol Turnpike Company, for $1000 per annum, to lay rails upon the turnpike; they have laid rails within the city of Philadelphia for a mile and a half, and run over the road six passenger cars; the city of Philadelphia, on January 2d 1867, ordained that passenger railway companies should pay $50 for each car run by them; the defendants, on the 30th of January 1867, paid to the city $300 under protest, with notice that suit would be brought to recover it back. "If upon the foregoing facts the court shall be of opinion that the defendant had not the right to demand, nor now the right to retain said sum of money, then judgment to be entered

[Frankford, &c., Railway Co. *v.* City of Philadelphia.]

for the plaintiffs in the sum of $300, with interest from February 1st 1867; otherwise for the defendant."

The court below entered judgment for the defendants, Sharswood, P. J., delivering the following opinion:—

"The question which is meant to be presented for decision in this case stated is, whether an ordinance of the city of Philadelphia, entitled 'A Further Supplement to an Ordinance to Regulate Passenger Railways,' approved January 2d 1867, is valid. By this ordinance it was provided that each and every passenger railway company should pay to the chief commissioner of highways the sum of $50 for each car run upon their respective roads. We are not disposed to follow the plaintiffs' counsel in his ingenious and elaborate examination of the power of the defendants to impose taxes on the franchises or property of corporations within their limits. We do not regard this ordinance as imposing a tax, but ordaining a police regulation.

"When the legislature authorized the plaintiffs to run passenger cars on their railroad, it gave them no privileges or immunities which did not belong in like measure to any individual or any other corporation who ran a carriage on the streets for hire or their own use. It is within the general police powers of the municipality to control and regulate vehicles of every class kept and used for hire on the streets of the city—wagons, carts, coaches, wheelbarrows and handbarrows; and they can lawfully require them to be registered and numbered, and to take out a license. On the 16th of April 1812 the city passed 'An Ordinance for the Regulation of the Owners and Drivers of Hackney-Coaches, Wagons, Carts and Drays within the City of Philadelphia,' without any special power from the legislature, and no one has ever questioned the validity of that ordinance. But if express legislative authority were needed for the regulation now in question, we have it.

"By the 12th section of an Act of Assembly, passed April 15th 1850, Pamph. L. 469, it is enacted 'That the select and common councils of the city of Philadelphia shall have authority (by ordinance or ordinances) to provide for the proper regulation of omnibuses, *or vehicles in the nature thereof;* and to this end it shall be lawful for the said councils, &c., to provide for the issuing of licenses to such and so many persons as may apply to keep and use omnibuses or *vehicles in the nature thereof;* and to charge a reasonable annual or other sum therefor.' It was provided by the 44th section of the Consolidation Act of February 2d 1854 that all acts of the legislature not inconsistent with that act should continue in operation until altered or repealed. Now, surely no one can doubt that a passenger railway car is a vehicle in the nature of an omnibus, if it is not itself an omnibus running on a railroad. It then only remains to inquire whether the sum of $50

on each car is a reasonable annual sum. · If $5 is a reasonable sum to pay for a hackney-coach, which holds four persons and stands half the day idle (as by Ordinance of 9th of May 1855, which has never been questioned), $50 cannot be an unreasonable sum to pay for a passenger car, which can be, and often is, packed so as to hold forty, which is constantly running, and empties and fills half a dozen times every trip. If there is any peculiar hardship in the plaintiffs' case, owing to the shortness of their road, they ought to apply for relief to the councils; but there is this to be observed, that the shorter the route, the fewer the cars necessary to maintain their road in order to keep the travel supplied by as frequent trips as the other roads in the city.

"Judgment for the defendants."

The plaintiff took a writ of error, and assigned for error entering judgment for the defendant.

*D. W. Sellers* and *G. W. Thorne*, for plaintiffs in error.—The plaintiff is liable to such burdens only as are clearly imposed; keeping the streets in repair, and several are specified;—this is not one. The obligation to keep the streets in repair gives the city no power over the plaintiffs' franchise: Pennsylvania Railroad v. Duquesne Bor., 10 Wright 224.

This is not valid as a tax. The cars are personalty, and have not been assessed: Acts of August 25th 1864, Pamph. L. 1030; April 29th 1844, § 32, Pamph. L. 497; April 21st 1858, § 1, Pamph. L. 385, Purd. 947, 949, pl. 108, 117; Navigation Co. v. County, 8 W. & S. 334; Navigation Co. v. Commissioners, 1 Jones 202; Iron Co. v. County, 6 Wright 424.

It is not valid as a license. The charter gave the company license to use the highways: Case of Philadelphia & Trenton Railroad, 6 Whart. 25; Stormfeltz v. Turnpike, 1 Harris 555; Mercer v. Railroad, 12 Casey 99. This power to the city should be given by express words in the charter of the company: Faust v. Railway, 3 Phila. R. 164; Philadelphia v. Railroad, 3 Grant 403; Railway v. Birmingham, 1 P. F. Smith 41; Railway v. Philadelphia, Id. 465; Philadelphia v. Railway, 2 Id. 177; Commonwealth v. Railroad, 3 Casey 339.

The city has no legislative powers but those granted, and it exercises power to license hackney coaches, &c., by express grant: Acts of April 2d 1790, § 3, 2 Sm. Law 526; April 15th 1850, § 12, Pamph. L. 468. Power to demand licenses is always strictly construed: Chess v. Birmingham, 1 Grant 438; Bennett v. Borough, 7 Casey 15; Phillips v. Allen, 5 Wright 481.

It is not valid as a police regulation. Where there is power granted, a reasonable exercise of the power will be upheld: N. Liberties v. Gas Co., 2 Jones 318; City v. Cook, 6 Casey 56; City v. Tryon, 11 Id. 401. But where there is no power to do

[Frankford, &c., Railway Co. *v.* City of Philadelphia.]

the thing, calling it a police regulation will not relieve the difficulty.

*J. Lynd*, for defendant in error.—The validity of the ordinance is based solely on the ground that it is a police regulation. The power to make such regulations is incident to all municipal regulations: Willcock Mun. Corp., Part I., §§ 229, 242, 335, 339; Buffalo *v.* Webster, 10 Wend. 101; Petition of Vandine, 6 Pick. 187; Commonwealth *v.* Bean, 14 Gray 52; Paige *v.* Forsacking, 36 Barb. 392; Commonwealth *v.* Robertson, 5 Cush. 438. They require no express charter provision: Commissioners *v.* Gas Co., Stormfeltz *v.* Turnpike, *supra;* Trenton Water Co.'s Case, 6 Pa. L. J. 32; City *v.* Harlem Railroad, 1 Hilton 580.

Regulations to control highways are pre-eminently police regulations: Milhan *v.* Sharp, 17 Barb. 437; Coates *v.* Moyer, 7 Conn. 585; Williams *v.* Central Railroad, 16 N. Y. 97.

A license is a police regulation: Boston *v.* Shaffer, 9 Pick. 419; Commonwealth *v.* Kimball, 24 Id. 359; Ash *v.* People, 11 Mich. 347; Cincinnati *v.* Buckingham, 10 Ohio 257; City *v.* Bryson, 15 Id. 643; Thompson *v.* State, 15 Ind. 451.

The city has express authority to enact this ordinance: Act of April 15th 1850, § 12, Pamph. L. 469, authorizes the councils "to provide for the proper regulation of omnibuses and vehicles in the nature thereof." Such are ,passenger cars. They have power also to make such laws, &c., "as may be necessary and convenient for the government and welfare" of the city: Acts of March 11th 1789, §§ 16, 44, 2 Sm. Laws 467, 455; February 2d 1854, §§ 4, 6, Pamph. L. 24.

The opinion of the court was delivered, March 2d 1868, by

STRONG, J.—The argument on behalf of the plaintiffs starts with the assertion that, being a corporation created by the state, they are subject only to such burdens as are clearly imposed by their charter. If by this it is meant that they are subject to no other burdens, regulations or restrictions than those which are expressly enumerated in the Act of Assembly which authorized their corporate existence, we cannot yield our assent to it. They were incorporated with two privileges. The one was a right to construct a railway upon and along some of the public streets of the city of Philadelphia, and the other was a right to run passenger cars on the railway constructed, and to engage in the business of passenger carriers. Of both these privileges they are undoubtedly purchasers, and they cannot be deprived of them by any action of the city. But the grant of a privilege to carry passengers in cars over the streets does not necessarily involve exemption from liability to municipal regulation. It is not the bestowal of a right superior to the rights enjoyed by passenger

[Frankford, &c., Railway Co. *v.* City of Philadelphia.]

carriers generally, whether such carriers be natural or artificial persons. The facilities for the use of the right may be greater, but the right itself can be neither more nor less than a natural person possesses. It is to be presumed that when the legislature creates a corporation, and authorizes it to carry on a specified business within the limits of a municipal organization, the business is intended to be conducted under the restrictions, rules and regulations that govern the same business when transacted by others within the same corporate limits. Can it be doubted that a company chartered and endowed with the single privilege of running a line of omnibuses within a city or borough, would take the privilege subject to reasonable municipal regulations of its enjoyment? Would the vehicles of such a corporation be beyond all control of the city or borough, as to the rate of speed at which they might be run, or as to the places where they might stop? Might they obstruct crossings whenever and wherever the company might please, and the municipal authorities be powerless to restrain the public inconvenience? Is such an exemption from reasonable local regulation a part of the legislative grant? If it is, the grant is more than conferring a right to do the business. Suppose a company chartered to make and sell bread in the city, is it beyond the power of the local authorities to prescribe the weight of the loaves which they may make and sell? Or if authorized to own and use hackney coaches, may not stands be prescribed for them? These and a multitude of similar questions may be put, to which there can be but one answer. A power or a right in the hands of a corporation can be no greater than the same power or right in the hands of a natural person. Any regulations which may be imposed upon its exercise by one, may be imposed upon its exercise by the other. It is not maintained that the use of a privilege conferred by the legislature may be denied by city authorities, but a reasonable regulation of the use is not such denial. No city ordinance can prevent any person from using drays or carts, but the mode and conditions of use are confessedly subject to direction by ordinance. And corporations chartered to do business in a city are to be regarded as inhabitants of the city, and, in the absence of special exemption, subject to its ordinances. In The Trenton Water Company's Case, 6 Penna. L. J. 32, it was said that "private corporations take their franchises subject to the rights of individuals and communities, and the strong presumption of law is always against unconditional adverse privileges." Upon this subject the case of The Commissioners *v.* The Northern Liberties Gas Co., 2 Jones 318, is very full and decisive. There a company had been chartered with full power to lay gas mains in the streets of the Northern Liberties. There was no restriction in the charter as to the time of the year when the mains might be laid. They were empowered to lay them

along the streets within the chartered limits, on application of the owners of property, whenever; in their opinion, the profit would yield six per cent. interest on the expenses. After the charter was granted the municipal authorities passed an ordinance, prohibiting opening of the streets for the purpose of laying gas mains between the 1st of December and the following March. This ordinance, it was ruled, bound the gas company. The opinion of the court, delivered by Rogers, J., treats it as a regulation, not a restraint of the powers of the company, and it asserts in the fullest degree the subordination of such companies to the control of reasonable local regulations, both as to the time and manner of exercising their powers. Other cases to the same effect are numerous. It is a mistake to argue, then, as has been argued on behalf of the plaintiffs, that they are subject to no burdens or restrictions other than such as are expressly mentioned in their charter. Liability to restrictions and regulations is involved, in the designation of the place where their authorized business is to be carried on.

It is surely unnecessary to spend time in showing that their right to run cars and carry passengers is neither enlarged nor diminished by the other right which they possess, viz. that to construct and own a railway upon which their cars may run.

The power of the city to regulate the use of the franchise of the plaintiffs to run cars being then established, the next question is whether the ordinance of which they complain is such a regulation. It provides that each car run shall be numbered, and have its number painted in a conspicuous place, that each car shall be licensed, on the payment of a stipulated sum, and that a certificate of the license, duly numbered, shall be hung in each. The case stated hardly raises the question whether this is a reasonable regulation. The argument rather denies that it is a regulation at all. It is obvious, however, that its effect is that of a police regulation. It clearly furnishes a means of identifying every car which may be run in violation of those rights and public interests which the city is authorized by its charter to maintain and secure. The city is authorized to " ordain, constitute and establish such ordinances, regulations and constitutions, as shall be necessary for the government and welfare of the said city."

But it is insisted there can be no regulation by license without express legislative authority. The mode or form of regulation, however, must be immaterial. It is the substance or effect only which need to be considered. Whether it is true that a police regulation cannot be made, by a requisition of licenses, without express authority from the legislature, may perhaps be a question in other cases. It is not in this. The 12th section of the Act of Assembly of April 15th 1850, Pamph. L. 469, enacted, " that the Select and Common Councils of the city of Philadelphia shall

[Frankford, &c., Railway Co. *v.* City of Philadelphia.]

have authority by ordinance or ordinances, to provide for the proper regulation of omnibuses, or vehicles in the nature thereof; and to this end, it shall be lawful for the said councils, &c., to provide for the issuing of licenses to such and so many persons as may apply to keep and use omnibuses or vehicles in the nature thereof, and to charge a reasonable annual or other sum therefor." This act is still in force. It plainly authorizes regulation by the issue of licenses. And we are of opinion that it applies to passenger railway cars. They are omnibuses, or if not, they are vehicles in the nature of omnibuses. They are opened to all, intended for all. The change of form from that of anything known when the Act of Assembly was passed, is not a change of the nature of the vehicle. In one city, at least, of Europe, large vehicles intended for indiscriminate public use, run sometimes upon a railway track, and at other times upon a common pavement. Nobody can doubt they are omnibuses. The form of the wheels, or the character of the roadway over which a vehicle runs, does not determine its nature so much as do the uses to which it is put, and for which it was designed. We hold then that the ordinance of January 2d 1867, is valid as a police regulation, there being nothing to show that it is unreasonable. It follows that the plaintiffs were not entitled to a judgment on the case stated. We have been referred to the case of The Mayor, &c. *v.* The Second Avenue Railroad, 32 N. Y. Reps. 261. It sustains the positions of the plaintiffs, but it is not authority with us, and we do not accept it as such. It differs in some particulars from this case. The municipal powers of New York were less than those of Philadelphia. The ordinance itself declared invalid, looked not to identification or to regulation in any way, but simply and exclusively to raising revenue. It was treated therefore as a fiscal measure. But in this case there is express power to grant licenses as a mode of police regulation, and other provisions of the ordinance tend to show that regulation was the object.

The judgment is affirmed.

THOMPSON, C. J., dissented.