# The City of McKeesport *v.* The McKeesport and Reynoldton Passenger Railway Company, Appellant.

*Municipal law—Police powers cannot be waived or bargained away by the city.*

The state cannot bargain away its right to exercise at all times its police power, nor can a municipality to which is delegated the state's police power over streets and highways enter into any contract by which the free exercise of the power granted can be abridged, limited or destroyed.

*Municipal law—Street railways—License tax—Police power.*

An ordinance or contract by which a street railway company was granted and accepted the franchise for use of the city's streets under certain conditions exempting it from any license tax for such franchise for fifteen years cannot be construed to relieve the company from payment of charges and fees the imposition of which is in its nature an exercise of police power.

*Municipal law—Police power—License tax on trolley poles.*

It is the imperative duty of a municipality to exercise the most rigid inspection of and scrutiny over the proper erection and adjustment of poles and wires permitted on the city streets for electrical service. The maintenance and repairs of the same also demand constant and rigid supervision, and every municipality owes such duty of rigid inspection to its citizens.

Argued April 15, 1896. Appeal, No. 86, April T., 1896, by defendant, from judgment of C. P. No. 2, Allegheny Co., Oct. Term, 1895, No. 247, on judgment for plaintiff. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Affirmed.

Assumpsit to recover license fee on street railway poles. Before WHITE, J. Judgment for plaintiff for $798.60.

The facts sufficiently appear in the opinion of the Superior Court.

*Error assigned* was in finding that defendant company is liable and entering judgment against defendant.

*E. P. Douglass*, for appellant.

*T. C. Jones*, for appellee.

OPINION BY WILLARD, J., July 16, 1896 :

The select and common councils of the city of McKeesport, on the 8th day of August, 1892, ordained and enacted an ordinance as follows : " An ordinance providing for the levy and collection of license tax on telegraph and other poles in the city of McKeesport.  Sec. 1.  Be it ordained and enacted by the select and common councils of the city of McKeesport, and it is hereby ordained and enacted by authority of the same, that from and after the passage of this ordinance all telegraph, telephone, electric light, electric power, heating or other companies, street car companies, and all other persons, companies, and corporations owning, erecting, maintaining, using, or permitting to stand upon the highways of the city of McKeesport any pole or poles, shall pay to said city an annual license tax of one dollar for each pole so owned, erected, maintained, used, or permitted to stand upon such highways.

" Sec. 2.  Any company or corporation having poles erected, maintained, used or permitted to stand upon such highways, renting or allowing the use of their poles above mentioned to any other company or corporation shall pay into the city treasury one dollar ($1.00) additional for each pole of said companies or corporations so using.

" Sec. 3.  That the city assessor shall assess all persons, companies and corporations made liable for the license tax under this ordinance and leave notice with the person, company or corporation assessed of the same at the time of making such assessment, which shall be in the month of June of each year.

" Sec. 4.  That such annual license tax, levied as aforesaid, shall be due and payable to the city treasurer on the first day of July of each year.  If not paid by the first day of August, ten percentum shall be added.  All remaining unpaid August first, shall be certified by the city treasurer to the city solicitor, who shall proceed to collect the same by actions of assumpsit or otherwise as shall be provided by law; the city treasurer shall make affidavit to the statements filed or warrants issued.

" Sec. 5.  That so much of any ordinance as may conflict with or be supplied by the foregoing be and the same is hereby repealed."

This ordinance was duly approved by the mayor of McKeesport on August 12, 1892.

The police power in a state " extends to the protection of the lives, health and property of the citizens and to the preservation of good order and the public morals." Section 9 of article 17 of the constitution of Pennsylvania provides that " no street passenger railway shall be constructed within the limits of any city, borough or township without the consent of its local authorities." By the act of May 23, 1889, article 5, section 3, as to the supervision, condition and safety of streets, the police power of the state is delegated to and vested in cities of the third class, with ample authority vested in each city of the class to ordain and enact requisite ordinances, by-laws, rules and regulations to enforce the power conferred, not inconsistent with the constitution and laws of the commonwealth.

The introduction and construction of telegraph, telephone, electric light, electric power and street car lines, through, over and upon city streets, the erection of poles and stringing of wires thereon charged with dangerous agencies as motive power calls for the exercise of more than ordinary care, not only in the erection of the poles and proper adjustment of the wires, but in the maintenance and repair of the same, and a vigilant and constant inspection. And every municipality owes the duty of rigid inspection to its citizens. In the performance of this duty the proper authorities of the city of McKeesport had a right to pass the ordinance above quoted, and neglect on their part to have done so would have been neglect of public duty.

The right to pass the ordinance as a police regulation is too well settled to admit of discussion : Western Union Telegraph Co. v. Phila., 22 W. N. C. 39 ; Philadelphia v. American Union Tel. Co., 167 Pa. 406 ; City of Chester v. Phila., Reading & Pottsville Tel. Co., 148 Pa. 120 ; City of Allentown v. Western Union Tel. Co., 148 Pa. 117 ; Chester City v. Western Union Tel. Co., 154 Pa. 464.

This ordinance being a reasonable police regulation, why should there be any obstacle to its prompt enforcement? The McKeesport & Reynoldton Passenger Railway Company claims exemption from the operation of this ordinance under the provisions of other ordinances and the terms of a certain contract with the city of McKeesport.

The facts appear in a case stated wherein the city of McKeesport is plaintiff and the railway company defendant, filed No-

vember 6, 1895, in the court of common pleas of Allegheny county to No. 247, October term, 1895. The claim of the plaintiff is for the amount of the license on three hundred and sixty-three (363) poles for the years 1893 and 1894, and the penalty of ten per cent for the nonpayment of the same, amounting to $798.60. By the case stated it appears that the defendant is a corporation and pays a state tax on its capital stock. Its property is used in the operation of its railway and the poles in question are for the support of the overhead wires in the distribution of electric power in its operation. By an ordinance of the borough (now city) of McKeesport, approved September 22, 1886, the McKeesport (now the McKeesport and Reynoldton) Passenger Railway Company was granted the right to use certain streets therein named upon certain conditions as to the repair of streets, rate of fare to be charged, time of construction, etc. Section 3 of the ordinance provides that the borough shall levy no license for borough purposes, for the franchises granted, until after the expiration of five years after the company commenced operating its road. By another ordinance approved September 4, 1890, the railway company is authorized to use and occupy additional streets and to use electricity as a motive power, to erect poles on and along all the streets mentioned in both ordinances to string overhead wires thereon for the supply and distribution of electricity as a motive power. Section 7 of this ordinance provides that for a period of fifteen years from and after the completion of the line, the railway company shall be exempt from the payment of any license to the borough for the franchises granted by its several ordinances. Section 6 provides that the ordinance shall not be enforced till a certain contract attached thereto is duly executed by the borough and the railway company. The contract was duly executed on the same day and reiterates some of the provisions of the ordinance and amounts to an acceptance of its terms by the railway company.

In answer to and as a defense to the plaintiff's claim, under the ordinance of August 12, 1892, the railway company interposed the exemption clauses above quoted in the court below, but the court gave judgment for the plaintiff's entire claim. The appellant has here assigned for error this action of the court.

It is claimed by the appellant that the several ordinances and

the agreement executed by both parties and attached to the ordinance last amounts to an irrevocable contract exempting the company for fifteen years from the payment of the license fee imposed by the terms of the ordinance of August 12, 1892. It is alleged that by the terms of this contract the company is exempt from the payment of any license fee for the franchises granted. Does the ordinance in question impose a license fee for a franchise granted? We do not so construe it. It applies to telegraph, telephone, electric light, electric power, heating companies, street car companies and all other persons, companies and corporations owning, erecting, maintaining, using, or permitting to stand upon the streets of the city any pole or poles, and imposes a license fee sufficient to reimburse the city for the necessary amount to be expended each year in the employment of suitable inspectors and other means to insure absolute safety to its citizens from the poles erected on its streets and the network of wires attached thereto, overhanging its roadways and sidewalks. In the performance of its duty in this behalf it is incumbent upon the city to take this matter into its own hands, employ its own agencies and not trust this duty to others not charged with the protection of the citizens as a primary duty. We have before quoted the clause of the constitution which allows this railway company to occupy the streets of McKeesport only by the express consent and permission of its councils. It is the settled law of the State that in granting such permission the councils have the right to impose the reasonable conditions contained in the ordinances referred to in the case stated. But it does not follow, because it was stipulated in the ordinances that the railway company should be exempt for five and fifteen years respectively from the payment of any license for the franchise granted, that the city should not exact from this company as well as other persons, companies and corporations the reasonable license fee imposed by the ordinances ordained and enacted solely as police regulations for the proper and just protection of its citizens.

Should we grant the contention of the appellant and construe the ordinances and attached agreement as a contract, made at the time between the councils and the company, that no ordinance should be passed imposing a license fee upon the poles erected for fifteen years, on principle and authority we would

have to pronounce it null and void. The state cannot bargain away its right to exercise at all times its police power, nor can a municipality, to which is delegated the right to exercise the state's police power over streets and highways, enter into any contract by which the free exercise of the power granted can be abridged, limited or destroyed. It is not granted by the state to the municipality for that purpose. If it was within the power of the councils of McKeesport to bargain with this railway company for immunity and exemption for fifteen years, why not for one hundred years or perpetually? It is not in the power of the councils of McKeesport of the present year to enter into a contract in any form by ordinance or written agreement so as to prevent the councils of another year from passing an ordinance as a proper police regulation, destroying and rendering null and void the contract so entered into by the previous council. Suppose the ordinance had provided that in a certain portion of McKeesport, densely populated, the speed of the cars should be five miles, and in another portion, not so densely populated, ten miles per hour for fifteen years, and at the end of five years the latter portion should become as densely populated as the former, would the alleged contract for one moment stand in the way of an ordinance making the uniform speed five miles an hour?

That a municipality cannot barter away the right at all times to exercise the police power delegated by the state, is settled beyond controversy. In Western Saving Fund Society v. City of Philadelphia, 31 Pa. 175, LEWIS, C. J., says: "We see no reason why a municipal corporation which may be created or destroyed by the state at pleasure, should stand upon higher or better footing than its own creator. Like a state it has its public duties and its private rights. It has no right to enter into a contract which interferes with its duties to preserve the health and morals of the city. It may, therefore, defeat the title of its own grantee when it becomes necessary to do so in order to abate a nuisance or preserve the public health." In R. R. Co. v. Riblet, 66 Pa. 168, Mr. Justice SHARSWOOD says: "It may well be doubted whether it would be in the power of the legislature by express contract to tie the hands of any succeeding legislature from the exercise of any necessary power of providing for the public safety. That would be to alienate a trust

confided to them for the public good." In Mott v. Penna.
R. R. Co., 30 Pa. 9: LEWIS, C. J., says: "The legislature has
no power to alienate any of the rights of sovereignty so as to
bind future legislatures, and any contract to that effect is void.
The rights of sovereignty are a trust to be exercised for the
benefit of the people, as occasion may require; not to be aban-
doned or bargained away at the discretion of their agents."
"Police power in a state extends to the protection of the lives,
health and property of the citizens and to the preservation of
good order and the public morals. The legislature cannot by
any contract divest itself of the power to provide for these ob-
jects. They belong emphatically to that class of objects which
demand the application of the maxim 'Salus populi suprema
lex,' and they are to be attained and provided for by such appro-
priate means as the legislative discretion may devise. That dis-
cretion can no more be bargained away than the power itself:"
Beer Co. v. Mass., 97 U. S. 33.

"Where a right to use a street has been acquired pursuant
to statute, and under a license from the municipality, it is in
the nature of a contract right, and such municipality cannot
destroy nor materially impair it. The courts must decide all
controversies in which such rights are involved, all such rights,
however, are subordinate to the paramount power, usually de-
nominated 'the police power' for that power cannot be anni-
hilated by contract:" Beach on Public Corporations, par. 1229.

"Powers are conferred upon municipal corporations for pub-
lic purposes; and as their legislative powers cannot, as we
have just seen, be delegated, so they cannot without legisla-
tive authority, express or implied, be bargained or bartered
away. Such corporations may make authorized contracts, but
they have no power, as a party, to make contracts or pass by-
laws, which shall cede away, control or embarrass their legisla-
tive or governmental powers, or which shall disable them from
performing their public duties:" 1 Dillon, Municipal Corpora-
tions, par. 97. "It may be said, generally, that the state, or
its duly authorized municipality, may require a street rail-
way company to do whatever is required for the health, safety
and welfare of the community, for the authority to enact meas-
ures for this purpose never passes from the sovereign no matter
what grants it may make:" Elliott on Roads and Streets, 573;

see also Commissioners v. N. L. Gas. Co., 2 Jones, 318; Johnston v. Phila., 60 Pa. 445; Phila. v. Lombard & South St. Pass. R. R. Co., 3 Grant's Cases, 403; Frankford etc. Pass. Ry. Co. v. City of Phila., 58 Pa. 119. We do not decide that the ordinance in question does not confer upon the appellant the full and free right to occupy the streets according to its terms; that right is a vested one and cannot be disturbed. The appellant has expended its money and made valuable improvements on the strength of the grant, and has an undoubted right to enjoy the same, subject, however, to the reasonable police regulations of the ordinance of August 12, 1892.

In view of the foregoing authorities and our views herein expressed, the specifications of error are overruled and the judgment affirmed.