# Duquesne Light Company, Appellant, *v.* City of Pittsburgh.

*Municipalities—Electric companies—Overhead poles and wires —Right of municipality to require removal—Ordinances—Title—. Construction—Equity—Injunction—Dismissal of bill.*

1. Ordinances adopted pursuant to statutory authority, requiring overhead wires and electric conductors to be removed and placed underground, are a proper exercise of the police power.

2. The title and preamble of an ordinance are parts thereof as they are of a statute.

3. In a suit in equity to enjoin a municipality from enforcing an ordinance which required public service corporations for furnishing electric light, heat or power, or for operating telegraph or telephone lines, to construct conduits and to complete the same before the work of completing the improvements on certain streets were completed, and to remove overhead poles or wires and place the same underground, and which provided that where the city had any of its lines upon such poles the companies owning said poles should first remove their own wires therefrom and place the same

underground and that when that was done, the city should remove its lines or wires, the lower court found upon abundant evidence that defendant's overhead wires carried electricity of a high voltage so as to be dangerous to anyone coming in contact therewith, and that they amounted to an obstruction and constituted a source of additional danger in fighting fires and created additional fire risk; refused a request to find, as a conclusion of law, that plaintiff had a vested right to construct and maintain its poles upon the city streets, where the request did not include a statement by way of modification that such right was subject to the reasonable control by the city authorities, and decided that the ordinance applied as well to poles used exclusively by the company as to poles which the city also used for its wires, and dismissed the bill. *Held,* no error.

*Practice, Supreme Court—Appeals—Equity—Assignments of error—Defective assignments.*

4. On appeal from decree in equity, assignments of error in which complaint is made of the admission of evidence and of the findings of the court below, are defective where no exceptions are shown to have been taken to the action of the court, and where it does not appear that any action was taken by the court in banc, with reference to the findings of which complaint is made.

Argued Oct. 14, 1915.   Appeal, No. 42, Oct. T., 1915, by plaintiff, from decree of C. P. Allegheny Co., April T., 1913, No. 2463, Docket "C," dismissing bill in equity for an injunction, in case of Duquesne Light Company, a Corporation, v. City of Pittsburgh, a Municipal Corporation.   Before BROWN, C. J., MESTREZAT, POTTER, STEWART and FRAZER, JJ.   Affirmed.

Bill in equity for an injunction to restrain the municipal authorities from enforcing the provisions of a municipal ordinance.   Before COHEN, J.

The ordinance in question was as follows:

### AN ORDINANCE.

Requiring all public service corporations or other persons occupying Main street, from West Carson street to Mansfield avenue; and Wabash avenue, from Steuben

street to Independence street, for furnishing electric light, heat or power to the public or operating telegraph or telephone lines, to place their cables underground, and prescribing regulations therefor and giving the city the right to use the underground systems constructed under this ordinance.

WHEREAS, The City of Pittsburgh is improving, by grading, paving and curbing or otherwise, Main street from West Carson street to Mansfield avenue and Wabash avenue from Steuben street to Independence street, on which streets there are maintained overhead poles or wires, and,

WHEREAS, It is now deemed advisable to have said poles or wires on these certain streets placed under ground and to provide at the time such streets are being improved underground conduits or other means whereby said overhead wire may, at a later time, be placed underground, without tearing up or disturbing said streets, therefore,

SECTION 1. Be it ordained and enacted by the City of Pittsburgh, in council assembled, and it is hereby ordained and enacted by the authority of the same, That all public service corporations and other corporations or persons having overhead poles or wires along the following streets in the City of Pittsburgh be and they are hereby directed and required to construct conduits on said streets and to complete same before the work of completing the improvements on said streets now proposed by the City of Pittsburgh is completed:

Main street from West Carson street to Mansfield avenue, Wabash avenue from Steuben street to Independence street.

SECTION 2. That all public service corporations and other corporations or persons having overhead poles or wires on the aforesaid streets shall have the right to erect and maintain terminal poles or other devices within the limits of each block and overhead cables or wires may be distributed from such terminal poles or other

devices to such places within such block as consumers may require; but no overhead cable or wires shall be constructed or maintained between the terminal pole or device in one block and any such terminal pole or device in another block.

SECTION 3. That all public service corporations and other corporations or persons having overhead poles or wires on any of the aforesaid streets shall, upon the removal of such poles and wires, repair in good order the sidewalks and paving of said streets under the direction and to the satisfaction of the Director of the Department of Public Works of the City of Pittsburgh.

SECTION 4. Where the city has any of its lines upon any poles required to be removed under this ordinance, the companies owning or maintaining said poles shall first remove their own lines and wires from such poles and place the same underground, and when that is done the city shall remove its lines and wires from said poles and place the same in the conduit, and thereupon the companies owning and maintaining the poles shall immediately remove the same and restore the highway to its original condition.

SECTION 5. The City of Pittsburgh shall at all times have the right and power to place, use and operate within any such underground conduit or subway such wires, cables, devices and apparatus as may be necessary for use of the bureau of electricity of said city for fire alarm, light, police or call system purposes, and at any and all times replace, alter, repair and maintain the same.

SECTION 6. The entire system of every such company and all the devices, means, appliances and apparatus and every part thereof of such corporation in so far as the same may affect, relate to or endanger the safety of the public or the police and fire apparatus lines of said city shall at all times be open to the inspection and be under the supervision and subject to the approval and control of the director of the department of public safety.

SECTION 7. Any violations of the provisions of this ordinance shall subject the person or persons so offending to a fine or penalty of not less than $5.00 nor more than $20.00.

Every day on which said person or persons shall fail to comply with the provisions of this ordinance shall constitute a separate offense and all such fines and penalties shall be recovered with costs to be collected as fines are now collected by law. Provided, however, that no person or persons shall be liable to fine under the provisions of this ordinance if interfered with in complying with the requirements of this ordinance by any act of the City of Pittsburgh, whether failure to make or complete the improvements proposed on said streets or otherwise, and the Director of the Department of Public Works of the City of Pittsburgh is hereby authorized and directed to extend the time in which said overhead wires are to be placed underground as may be necessary on account of delays in undertaking or completing the said improvements on said streets of the City of Pittsburgh.

SECTION 8. That any ordinance or part of ordinance conflicting with the provisions of this ordinance be and the same is hereby repealed so far as the same affects this ordinance.

. Other facts appear in the opinion of the Supreme Court.

The court on final hearing dismissed the bill. Plaintiff appealed.

*Errors assigned* were various findings of fact and law and the decree of the court.

*Edwin W. Smith,* of *Reed, Smith, Shaw & Beal,* for appellant.

*Charles K. Robinson,* with him *Charles A. O'Brien,* for appellee.

OPINION BY MR. JUSTICE POTTER, January 3, 1916:

With the consent of the municipal authorities of the City of Pittsburgh duly granted to it, or to its predecessor to whose rights it succeeded as lessee, the Duquesne Light Company occupied certain streets in the West End of Pittsburgh, with its poles and overhead wires, for the transmission of electric current for the supply of light, heat and power to the public. In other and more congested parts of the city, such wires are carried in underground conduits. Near the locality in question, on West Carson street, the wires of the Duquesne Light Company are now underground, and are carried from an underground service to an overhead service on South Main street. The authorities of the City of Pittsburgh decided to improve certain streets in that vicinity, and having commenced the work, passed an ordinance, of which the preamble is as follows:

"Whereas, the City of Pittsburgh is improving, by grading, paving and curbing or otherwise, Main street from West Carson street to Mansfield avenue, and Wabash avenue from Steuben street to Independence, on which streets there are maintained overhead poles or wires, and,

"Whereas, it is now deemed advisable to have said poles or wires on these certain streets placed underground, and to provide at the time such streets are being improved, underground conduits or other means whereby said overhead wires may, at a later time, be placed underground without tearing up or disturbing said streets."

The abuse of the surface of city streets by frequent tearing up of the paving, caused by ill advised planning of improvements is notorious, and the effort in this instance upon the part of the city to lessen this evil was certainly commendable. With this object in view, and apparently taking it for granted that if the poles and overhead wires were removed from the streets, the light company would, as a matter of course, in accordance

with the usual method, place its wires in underground conduits, the city went on to provide in the ordinance, that all public service corporations, and others having overhead poles or wires along the streets in question, should construct conduits for the reception of the wires, before the work of improving the streets named should be completed. The emphasis was upon the time for doing the work, so as to save the surface of the streets, rather than upon the fact of construction. This direction to construct conduits was, of course, dependent upon the assumption that the light company intended to continue its business and to serve the public in that locality. It goes without saying that the company had the right to decline to construct conduits, even as it presumably had the right to abandon its business at that point, upon condition that it made due provision for carrying out its contract obligations, and for the discharge of the duties to the public which it had assumed under the terms of its charter. But the record shows no intimation of any intention upon the part of the company to relinquish any part of its business.

An inspection of the ordinance shows that it is not carefully drawn, and the intention of the city is not made as clear as it might have been, but if we look at the title and preamble, which are parts of the ordinance, as they are of a statute, (See In re Beechwood Avenue, 194 Pa. 86), it is apparent that the purpose was to require public service corporations occupying specified streets "to place their cables underground," as a consequence of their removal from the poles. In Section 4 of the ordinance there is a recognition of the fact that the city has some of its lines of wire upon certain poles, and in such cases, the companies maintaining the poles are first required to "remove their own lines and wires from such poles," and then the city is to remove its lines and wires from the poles to the conduit and afterwards the companies are to remove the poles, and restore the highway to its original condition. It is true that the

requirements of the ordinance might by a narrow and strict construction, be held to apply only to poles which were also used by the city for carrying its wires. But it is apparent that it was not the purpose of the city council to so limit the ordinance, and that it was intended to apply to all poles and overhead wires upon the streets named.

The plaintiff in this case, the Duquesne Light Company, refused to comply with the requirements of the city authorities and filed this bill in equity, seeking to have the city restrained by injunction from enforcing the provisions of the ordinance, and from interfering with, or removing any of plaintiff's poles, wires, cables or other apparatus now erected and maintained upon the streets in question. These wires, and the other equipment, as has been stated, were at the time, at that particular locality, all maintained overhead upon poles.

In the answer, which was filed upon the part of the city, it is alleged that the overhead wires of plaintiff carry a current of high voltage for lighting purposes, and are at all times a source of possible danger to property along the streets, and to the traveling public. It is also averred that the terms of the ordinance constitute a lawful and reasonable exercise of the police power by the city.

The case was tried in the court below before COHEN, J., who in a careful and elaborate opinion held that the ordinance was valid, and affirmed the contention that its adoption was a proper exercise of the police power. Exceptions, which were filed on behalf of plaintiff to the findings of fact and conclusions of law reached by the trial judge, were overruled, and a final decree was entered by the court below, dismissing the bill. Plaintiff has appealed, and on its behalf its counsel have filed eleven assignments of error. In the first assignment, error is alleged in the entry of the final decree by which the plaintiff's bill was dismissed. In five assignments, from the second to the sixth inclusive, no exceptions are

shown to have been taken to the action of the court below, nor does it appear that any action was taken by the court in banc, with reference to the findings of which complaint is made. In the eleventh assignment, error is alleged in sustaining an objection to the relevancy of a stipulation filed by counsel. But neither the record, nor the assignment of error, shows any exception to the ruling of the court sustaining defendant's objection. The first assignment of error, however, which is to the entry of the final decree dismissing the bill, raises the important questions, which call for consideration on this appeal.

The right of a municipality to exercise control over the erection and maintenance of poles and electric wires in the streets, and to compel them to be removed or the wires placed underground, where the safety or convenience of the public requires such action, has been generally recognized. Thus in 3 Dillon on Municipal Corporations (5th Ed. 1911) Sec. 1274, it is said: "Statutory enactments and ordinances adopted pursuant to statutory authority which require overhead wires and electrical conductors to be removed and placed underground are generally recognized as a proper exercise of the police power, and do not annul or violate the contract rights of companies holding franchises to use the streets for the purpose of maintaining such wires. Such statutes and ordinances are simply a regulation of the exercise of the franchise or privilege granted, to the end that it shall be enjoyed in such a manner as to inconvenience and endanger the general public as little as possible." Another expression of the consensus of opinion as to what may be regarded as the settled law of the subject, is found in 2 Tiedeman on State & Federal Control of Persons & Property, Sec. 211, p. 971, where it is said: "Telegraph, telephone, electric light and other companies, which in the prosecution of their business require the stringing of wires for the transmission of the necessary electrical current, are peculiarly subject to

police regulations, in order to protect the public against
the nuisance and dangers to life and property which are ·
threatened by the net-work of wires which now encircle
and interlace a large city.    The dangers and annoyances
are greatest when the wires are overhead and strung on
the unsightly poles which disfigure all of our streets.
......The regulations are constitutional, provided they
are reasonable, even though conformity to the police
regulation may prove both expensive and difficult."

Our own cases are in accord with the general trend of
authority.    In Com. of Pennsylvania, ex rel. Bell Telep.
Co. of Philadelphia v. Warwick, et al., 185 Pa. 623, a
case involving the right of a telephone company to erect
terminal poles, Mr. Justice MITCHELL said (p. 639):
"While the city, however, has parted with its power to
designate the streets to be occupied, it has expressly re-
tained the authority to regulate the manner of occupa-
tion.    And this includes the power to compel the adop-
tion from time to time of all reasonable and generally
accepted improvements which tend to decrease the ob-
struction of the streets or increase the safety or con-
venience of the public in their use."    In American Tele-
graph and Telephone Co. of Penna. v. Millcreek Twp.,
195 Pa. 643, the question involved was the right of the
road commissioners of a township to compel the removal
of defendant's poles from one part of the highway and
their location in another part.    It was held that the
commissioners have such right and a bill for an injunc-
tion against them was dismissed.    The reason given for
the order of removal was that permission had been
granted a street railway company to build an electric
railway in the highway, which would greatly facilitate
public travel thereon, but would be obstructed by the
poles as located.    The court below reached the conclu-
sion (p. 645): "That a telegraph or telephone company
by erecting its line of poles in a certain place in the
highway, with the express or implied assent of the road
authorities, does not thereby acquire a vested right to

perpetually maintain said line of poles in that particular location. And in after years, if changed conditions render it necessary for the public good that such line of poles be moved to a different part of the highway, the road authorities have the right to compel such removal." The decree was affirmed upon the findings and conclusion of the court below, and we said per curiam (p. 647) : "We are clearly of opinion that the location of the poles and wires of the plaintiff company was a matter which was within the reasonable control of the road commissioners, and we find no evidence of any abuse of their discretion on the record." In New Castle City v. Central Dist. Print. & Teleg. Co., 207 Pa. 371, our Brother MESTREZAT, speaking for the court, said (p. 376) : "It is well settled in this State that a municipality may provide by reasonable regulations the manner in which a telegraph or telephone company must enter upon and occupy its streets. The rights of the company acquired by the charter must be exercised in subordination to this authority inherent in the municipality."

The power of the City of Pittsburgh to compel the removal of poles and overhead wires from its streets, is not to be doubted, provided that power be exercised in a reasonable manner. That it has been so exercised in this instance has been found by the trial judge in his twenty-eighth and twenty-ninth findings of fact, where he says : "In the enactment of the ordinance in this case there was no abuse of power and the enactment of the same was a reasonable exercise of the city's police power," and "in the adoption of the said ordinance the council of the City of Pittsburgh was acting in the interest of the general public, actuated by existing conditions pertaining to the street in question."

The trial judge also found as a fact, that the overhead wires of the defendant company carry electricity of such high voltage, as to be dangerous to any one coming in contact with the wires; and that they amount to an obstruction, and constitute a source of additional danger,

in fighting fires, both to the firemen and the public, and create additional fire risk. Our examination of the record shows that the evidence was sufficient to sustain these findings of the court below.

In one of the assignments of error counsel for appellant suggest that the court below erred in dismissing plaintiff's exception to the refusal of a request for findings of fact as to the annual income of plaintiff from subscribers in the territory served by its lines on Main street and Wabash avenue, and as to the respective annual cost of maintaining overhead and underground wires. It is very doubtful if the finding, which was requested, was material to the question here involved. But, if it be so considered, it was peculiarly a matter of fact for the determination of the trial judge, and in his fourteenth finding of fact, which is not assigned for error, he states that the annual income from the subscribers in the territory involved, taken in connection with the income to be derived from the city for arc lamps, will "amount to a sum sufficient to reimburse the company for any annual cost of maintenance of an underground system and give a profit to the plaintiff."

The trial judge was also right in refusing the request of plaintiff's counsel to find as a conclusion of law broadly to the effect that plaintiff had a vested right to construct and maintain its poles and wires upon the streets of the City of Pittsburgh, including the locality in question. This request as framed was too broad in that it did not include a statement by way of modification, that such right was subject to the reasonable control of the city authorities. For that reason, the request was properly refused.

Counsel also contend that the court below erred in refusing a request for the statement of a conclusion of law to the effect that the city has no right to require plaintiff to place its wires underground. Literally speaking this is true. The plaintiff may decline to build conduits, and place its wires therein, but if so it may face

the alternative of having to cease doing business in that section. It cannot continue to maintain its poles and wires on city streets in defiance of reasonable police regulation, or in opposition to a reasonable mandate of the city council, such as that embodied in the ordinance now under consideration. Companies engaged in transporting through the streets, so dangerous a commodity as electricity must be subjected to proper regulation by municipal authority. In populous centers, the advantages to be derived from placing the wires underground are obvious both to the companies concerned, and to the public. The companies gain by the protection afforded to the wires from wind and storm, and consequent interruption of the service. The public are relieved from the presence of a net work of wires, placed upon the streets by a variety of companies, that tend to constitute a serious hindrance in case of fires, to say nothing of the unsightly disfigurement of the streets. In the present case, we do not find in the record anything to indicate that, in the action taken by the city council, there was other than a due regard for the public welfare. There is nothing in the evidence to justify a court of equity in interfering with the requirement of the city that plaintiff's poles and overhead wires shall be removed from the streets in question.

The decree of the court below, dismissing the bill of plaintiff, is affirmed, and this appeal is dismissed at the cost of appellant.