## Oil City, Appellant, v. Postal Telegraph Cable Company.

*Municipalities—Telegraph companies—Use of streets—Conduits
—Police powers—Act of June 12, 1913, P. L. 489.*

Municipal legislation compelling corporations using electric
wires in the streets to place the same in conduits beneath the sur-
face, is the exercise of police power, and is a reasonable regulation

merely of the mode in which the companies may exercise their franchises.

Under the Act of June 12, 1913, P. L. 489, which empowers cities of the third class to define by ordinance a reasonable district within which electric light wires, telephone and telegraph wires shall be placed under ground, "in conduits owned either by the municipality or by corporations owning such wires, or by corporations organized for the purpose of laying such conduits and letting space therein," a city may compel a telegraph company to place its wires in conduits of another company owning and using such wires, although such conduits are not owned by the municipality, or by corporations organized for the purpose of laying conduits and letting space therein. The fact that the company owning the conduits is a West Virginia corporation is immaterial if it appears that it has a right to operate in Pennsylvania, and that it had obtained the municipal consent; and it is also immaterial that no provision was made in the ordinance for fixing the compensation of the company owning the conduit, inasmuch as such company has its remedy in the Public Service Commission and the courts.

Authority in a municipality to require all wires carrying electricity to be placed under ground, does not impose the necessity on the city of including all such wires to be so located.

A municipal regulation requiring electric wires to be placed under ground, which can be complied with without serious detriment to the instrumentalities of business, does not infringe on the powers of congress to regulate commerce, or on the exemption of the agencies of the Federal Government from State control.

Argued April 12, 1917. Appeal, No. 162, April T., 1917, by plaintiff, from judgment of C. P. Venango Co., April T., 1915, No. 8, for defendant on case tried by the court without a jury in suit of Oil City v. Postal Telegraph Cable Company. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Reversed.

Assumpsit to recover penalties. Before CRISWELL, P. J.

From the record it appeared that a summons in assumpsit was issued and statement filed to recover penalties from defendant on account of its violation of a

city ordinance in refusing to put its telegraph wires under ground in conduits. The action was defended against on the ground that the ordinances were invalid. By agreement, a jury was dispensed with and the facts submitted to the court for decision under the Act of April 27, 1874. The court below decided the ordinances invalid and entered judgment against the plaintiff for costs, from which this appeal was taken.

*Error assigned* was in entering judgment for defendant.

*Peter M. Speer,* with him *Edmund C. Breene,* City Solicitor, for appellant.—Under its general police powers the plaintiff city, when the safety or convenience of the public require it, may, without express statutory authority, compel the wires of telegraph and telephone companies to be placed underground: Duquesne Light Co. v. Pittsburgh, 251 Pa. 557; Mo. Pac. R. R. Co. v. Humes, 115 U. S. 512; Minneapolis & St. L. R. Co. v. Beckwith, 129 U. S. 26; City of Pittsburgh's App., 115 Pa. 4; Philadelphia v. Empire Pass. Ry. Co., 177 Pa. 382; Allegheny v. Millville, Etc., Ry. Co., 159 Pa. 411; Allegheny City v. Peoples, Etc., Gas and Pipeage Co., 172 Pa. 632; Bellevue Borough v. M. L. & H. Co., 238 Pa. 388.

Plaintiff city has the right, in the exercise of its police powers, to classify wires upon its streets according to their use, and adopt different and proper regulations for each class: Baldwin v. Philadelphia, 99 Pa. 164; Klinger v. Bickle, 117 Pa. 326; Norristown v. Norristown Pass. Ry. Co., 148 Pa. 87; Commonwealth v. Finn, 11 Pa. Superior Ct. 620; Reed v. Clearfield Co., 12 Pa. Superior Ct. 419; Commonwealth v. Norton, 16 Pa. Superior Ct. 423.

The conduits of the Petroleum Telephone Company, into which the wires of the defendant company have been ordered placed, are such conduits as are specified in the

Acts of 1903 and 1913, into which the wires of companies may be ordered placed, and said Petroleum Telephone Company has under its charter and the laws, full power to construct and operate said conduit system.

*A. R. Osmer*, with him *N. F. Osmer*, for appellee.— Cities of the third class have no right to compel the owners of electric wires occupying their streets to be placed under ground, except by virtue of express delegation of authority so to do, by the State under the police power of the State: Duquesne Light Co. v. Pittsburgh, 251 Pa. 557; People ex rel. New York Electric Lines Co. v. Squire, 107 N. Y. 593.

The conduits of the Petroleum Telephone Company are not such as are designated by the statutes into which the city has the right to order the wires of the defendant to be placed. A corporation possesses no powers but those which are given by its charter, either expressly or impliedly in strict furtherance of the objects of its creation: Diligent Fire Company v. Commonwealth, 75 Pa. 291; Wolf v. Goddard, 9 Watts 544; Com. v. Bringhurst, 103 Pa. 134; Muck v. Hitchcock, 212 N. Y. 283.

OPINION BY HENDERSON, J., October 8, 1917:

This appeal involves a consideration of the power of cities of the third class to require telephone and telegraph companies to place their wires under ground in limited districts within the municipal territory and the legal capacity of a telephone company maintaining telephone lines and doing business in such city to construct and operate a conduit within such district in which other telephone and telegraph companies in such district may be required to place their lines on such reasonable terms as may be lawfully established. The authority of such cities to require corporations or individuals owning electric wires to place the same in underground conduits is affirmed by the appellant both because of the general police power of the

city and the special authority conferred by the Act of
June 12, 1913, P. L. 489. Among the powers conferred
on cities of the third class by the Act of May 23, 1889,
are the authority to keep the streets, avenues, alleys and
lanes within the city in good order and repair and in
safe passable condition and to make all such ordinances,
by-laws, rules and regulations not inconsistent with the
Constitution and laws of the Commonwealth as may be
expedient or necessary in the proper management, care
and control of the city and the maintenance of its peace,
good government and welfare. This is very broad au-
thority and covers the police power of a municipality.
This power extends to the protection of the lives, health,
comfort and peace of all persons and the protection of
all property. It is a power which cannot be alienated,
surrendered or abridged for it is the exercise of a func-
tion of government without which the State would be-
come incapable of protecting the rights which it was
organized to safeguard. It was said in Patterson v.
Kentucky, 97 U. S. 501, "By the settled doctrines of this
court the police power extends at least to the protection
of the lives, the health and the property of the communi-
ty against the injurious exercise of any citizen of his
own rights." The ordinance which the appellant seeks
to enforce belongs undoubtedly in the category of police
regulations. Its object is to abate what has grown to
be an evil in congested districts in cities and a menace
to the public welfare and was described in People ex rel.
N. Y. Elec. Lines v. Squire, 107 N. Y. 593, as an evil so
great that every large city is covered with a network of
cables and wires attached to poles, houses, buildings and
elevated structures bringing danger, inconvenience and
annoyance to the public. The ordinance in question was
intended to restrain and control in a measure at least the
annoyance and obstruction created by the large number
of poles and telephone and telegraph wires maintained
on designated streets and to secure the greater safety of
the city from fires and electrical accidents as well as the

removal of the many poles which obstructed to a greater or less degree freedom of travel on the parts of the streets affected by the regulation.   The primary purpose of these thoroughfares was convenience to the public in traveling and while their use has been granted to electrical, water, gas and other companies such use is necessarily subordinate to the primary purpose as ways of passage and the occupancy of the streets by such companies is subject to reasonable regulation in the promotion of general advantage to the community. It is an established principle that every property owner holds title under the implied liability that his use of it shall not be injurious to the rights of the community. The right to maintain telephone and telegraph wires along the streets of a city is not absolute although such occupancy may be under municipal consent; it is subject to such regulation as the public interests demand. When, therefore, the safety and comfort of the community require that electrical wires be placed in conduits beneath the surface such regulation is as lawful as would be one which required the wires to be placed above the ground or in a conduit along the surface or that prescribed the kind and location of poles to be used.   The propriety of removing the poles and wires in the manner proposed by the city is not questioned and the facts disclosed by the evidence and the findings of the learned trial judge are a sufficient justification of the municipal action providing for the placing of the wires in the conduit.   This right of regulation has been recently considered in Duquesne Lighting Co. v. Pittsburgh, 251 Pa. 557, in which case it was said: "The right of a municipality to exercise control over the erection and maintenance of poles and electric wires in the streets and to compel them to be removed or the wires placed underground, where the safety or convenience of the public requires such action, has been generally recognized."   It was there held to be settled law of the subject that the companies which in the prosecution of

their business required the stringing of wires for the transmission of electrical currents are peculiarly subject to police regulations in order to protect the public against the nuisance and dangers to life and property which are threatened by the network of wires which now encircle and interlace a large city.   In Com. v. Warwick et al., 185 Pa. 623, it was held that while the city had parted with its power to designate the streets to be occupied by the telephone company it expressly retained the authority to regulate the manner of occupation which includes the power to compel the adoption from time to time of all reasonable and generally accepted improvements which tend to decrease the obstruction of the streets or increase the safety or convenience of the public in their use.   The same principle is applied in American Telegraph and Telephone Co. v. Mill Creek Twp., 195 Pa. 643, where the authority of the road commissioners of a township to compel the removal of telephone poles from one part of a highway to another was involved.   The decisions in the federal courts and the courts of other states concur in the judgment that legislation compelling companies using electric wires to place the same in conduits beneath the surface is the exercise of police power and is a reasonable regulation merely of the mode in which the companies may exercise their franchises.

It is not necessary, however, to rely on the power implied in the general grant to the city of authority to legislate for the general welfare of the community, for the Act of June 12, 1913, expressly empowers such municipalities to require companies using electric light, telephone and telegraph wires to place the same in conduits within certain districts, and it is the refusal of the defendant to comply with this requirement of which the plaintiff complains.   Objection is made to the enforcement of the ordinance because the conduit constructed and operated by the Petroleum Telephone Company is not such a conduit as is covered by the provisions of the

act referred to and because that company is not authorized to maintain such a conduit. The first section of the act empowers the municipal authorities of cities of the third class to define by ordinance a reasonable district within which all electric light wires, telephone and telegraph wires shall be placed under ground "in conduits owned either by the municipality or by corporations owning such wires or by corporations organized for the purpose of laying such conduits and renting space therein." The learned trial judge was of the opinion that the conduit constructed by the Petroleum Telephone Co. is not within either of the classes named in the statute and that the ordinance could not be enforced against the defendant for that reason. It will be observed that there are three classes of proprietors referred to in the statute: (a) municipalities; (b) corporations owning "such wires"; (c) corporations organized for the purpose of constructing and renting conduits. The structure in which the ordinance directs the wires to be placed was not made by the city nor by a corporation organized for that specific purpose. It is owned, however, by a corporation lawfully using electrical currents along its wires in the city and which has with the consent of the local authorities the right to lay conduits in the streets occupied by it, as will appear by reference to the Act of March 19, 1903. The fact that this company was incorporated under the laws of West Virginia does not affect the question for it is not controverted that it has authority to exercise its functions as a telephone company in Pennsylvania and that it is engaged in business in Oil City with municipal consent. There is no restriction in the act last referred to of the right granted to corporations formed under the laws of Pennsylvania and its terms apply to corporations for what purpose soever formed and lawfully using electrical currents within this Commonwealth. It is, therefore, a corporation owning such wires as are included in the provisions of the Act of June 12, 1913. It was the

opinion of the court below that that part of the act which refers to conduits of corporations owning wires applied only to the wires of the particular company and that the authority conferred was to compel each company to place its wires in its own conduit. But we think this was not the legislative intent. The purpose of the statutes relating to the subject was to enable the municipal authorities to relieve the streets of the obstructions and peril incident to the maintenance of many poles and wires in congested districts and thereby to increase the convenience, comfort and safety of the public. The question was a practical one and inasmuch as provision was made for the leasing by one company using electric currents of space in its conduits to similar companies and in view of the fact that it would be highly inconvenient if not impracticable to appropriate the subsurface of the street to so many companies engaged in business involving the use of electric wires it seems not unreasonable to hold that it was the intention by this enactment to permit the construction of a conduit by one company which might be used by other companies operating electric wires on the same street. The language of the act is susceptible of this interpretation. The Act of June 12, 1913, is an amendment of the Act of April 28, 1903, which latter act followed by a short interval the Act of March 19, 1903. As the acts all refer to the subject of the placing of electrical wires in conduits they should be read together for the purpose of ascertaining the legislative purpose and so reading them our conclusion is that the intention was to invest cities of the third class with authority to require companies using electrical currents to place them in suitable conduits constructed either by the city or by a corporation organized for that purpose or by a corporation owning and using such wires. Statutes are to be construed so as may best effectuate the intention of the makers which sometimes may be collected from the cause or occasion of passing the statute: Com. v. Fraim, 16 Pa. 163; Peo-

ple v. Utica Ins. Co., 15 Johns. Reps. 358, and this should be done though such construction may seem contrary to the letter: Umholtze's License, 191 Pa. 177. The language of the act under consideration does not require an interpretation which precludes the enforcement of the ordinance and if it be considered doubtful the doubt should be resolved in favor of the legislative object. The evidence shows that there are seven different companies or individuals operating electric wires on the narrow streets affected by the ordinance and similar conditions exist in many of the cities of the Commonwealth. It seems improbable that in addition to the servitude of gas, water, sewer and steam pipes in the streets a separate conduit must be constructed for each corporation using electric wires where neither the city nor a company organized for that special purpose maintained a conduit system. One conduit properly constructed would accommodate the service of the city and this must have occurred to the legislature. The Act of March 19, 1903, P. L. 34, was evidently intended to obviate the multiplication of poles, wires and conduits in city streets and to provide a means by which such wires could be placed in a conduit operated by one company. It is not asserted that the placing of electrical wires of different companies in separate spaces in the same conduit is impractical or detrimental to the efficiency of the service and regard being had to the advantage to the public of such a change as is proposed in this case we are unable to avoid the conclusion that the legislature intended to empower all cities of the third class to require all the companies using electrical currents on the streets to place their wires in an adequate conduit owned by a telephone or telegraph company if the companies so affected were not themselves owners of conduits in the streets indicated.

It is urged, however, that the ordinance is ineffective because no provision is made for fixing the compensation to be received by the company owning the conduit.

Provision is made in the third section of ordinance No. 752 for a court of arbitrament whose decision shall be binding on the Petroleum Telephone Company and as it has accepted the ordinance it would be bound by its provisions in this respect. It does not follow, however, that companies renting the conduit are bound by the award of the arbitrators. The Act of June 12, 1913, empowers the city to regulate by ordinance the rate of rental to be charged for space in a conduit. This question is probably unimportant, however, in view of the legislation relating to the Public Service Commission to which companies interested may appeal and there is an ultimate resort to the courts for the protection of the parties from an unreasonable rental. The appellee is abundantly protected, therefore, from unreasonable charges or regulations in the use of the conduit.

When we consider the legislation on the subject as a police regulation it is not important that the city does not require all electrical wires to be placed in the conduits. That is a matter for the exercise of municipal discretion, regard being had to the number of wires of the different classes, their proximity to buildings, the extent to which they obstruct the access to buildings in case of fire, the degree to which they interfere with the use of police and fire wires owned by the city and the effect they have in otherwise obstructing and disfiguring the streets. Authority to require all wires to be placed under ground does not impose the necessity on the city of including all wires carrying electricity to be so located. The case is not one of all or none in the exercise of the police power. It is the right and duty of the city to supervise and control, and this implies the exercise of discretion as to the manner of regulating. The appellee did not prove a permit from the city to occupy its streets but claims the right to do so as a telegraph company engaged in interstate commerce under the Act of Congress of July 24, 1866. It has no contract right, therefore, and even if that were the case its contract would be sub-

ordinate to the reasonable exercise of the police power of the city. The regulation proposed is practically feasible and can be complied with by the defendant without serious detriment to its instrumentalities of business. Such regulation does not infringe on the powers of congress to regulate commerce or on the exemption of the agencies of the federal government from State control: Barbier v. Connolly, 113 U. S. 27; W. U. Tel. Co. v. Atty. Gen. of Mass., 125 U. S. 530; Minneapolis & St. L. R. Co. v. Beckwith, 129 U. S. 26; W. U. Tel. Co. v. Mayor of N. Y., 3 L. R. A. 449. We are of the opinion that the appellant is within the limits of its lawful authority in the enactment of the ordinance in question.

The judgment is therefore reversed and the record remitted to the court below with direction to enter judgment in accordance with this opinion.