William Laubach & Sons, Appellant, *v.* Easton.
Grollman, Appellant, *v.* Easton.

Easton Bon Ton Company, Appellant, *v.* Easton.
Mayer, Appellant, *v.* Easton.

Argued May 25, 1943. Before MAXEY, C. J.; DREW, LINN, STERN, PATTERSON, PARKER and STEARNE, JJ.

*John Francis Goldsmith,* for appellants.

*A. Evans Kephart,* with him *Charles D. Hogan,* Assistant City Solicitor, and *John W. Kephart,* for appellee.

OPINION BY MR. JUSTICE PARKER, June 30, 1943:

Four bills in equity were filed and the issues raised were tried together in the court below. They were so considered here on argument and, as they all involve the same fundamental questions, the appeals will be disposed of in one opinion. Plaintiffs sought to enjoin defendant from putting into operation an ordinance providing for the installation of parking meters in a congested section of the city of Easton, and asked for the removal of such meters if they were installed before the

entry of the decree sought. Three of the bills were brought by owners of property abutting on streets in the meter zone and the fourth was a taxpayer's bill. The chancellor, affirmed by the court below, dismissed the bills. We agree with that conclusion.

The ordinance is attacked generally as being in violation of abutting owners' constitutional rights of property and as a deprivation of legal rights of plaintiffs and of all those entitled to use the public highways of the Commonwealth. Complaint is also made to its particular terms which are alleged to be illegal even if a proper parking meter ordinance could be enacted.

This is the first time that the legality of a parking meter ordinance, now so generally used, has been before this court,[1] but the underlying principles are fairly well settled in this jurisdiction. The ordinance by its preamble declared that in certain sections of the city the free movement of traffic had been impeded for a long period, that attempts to regulate it were not successful, that the existing conditions were a menace to life, limb and property, and that in the opinion of the council the best method to correct these conditions was to designate individual parking spaces in the congested area for parking purposes "for reasonable intervals of time" and to require the users of such space to pay "a portion of the cost of establishing and maintaining the same". The ordinance then provided for the installation of registering meters and a charge of one cent for twelve minutes and five cents for one hour. It did not permit parking for more than one hour in the designated area. Parking space was to be free "for loading and unloading purposes", and free parking was permitted on holidays and after business hours. Penalties were provided for violation of the terms of the ordinance.

It is first contended that an abutting property owner ordinarily has title to the fee to the center of the high-

---

[1] For cases in other jurisdictions see Notes, 108 A. L. R. 1152, 130 Id. 316.

way subject to the public easement and that, therefore, the right of way may only be employed by the state for the purposes for which it was taken, and that, specifically, each property owner and his business and social guests have the right to park their motor vehicles on the streets in front of such property for a reasonable time free of any charge.

When land is taken for use as a highway the owner does not surrender his entire title to the land so taken but reserves rights above, below and on the surface that do not interfere with the use of such land for highway purposes: *Cain v. Aspinwall-Delafield Co.*, 289 Pa. 535, 539, 137 A. 610. He may prevent an unlawful use of the highway: *Hopkins v. Catasauqua Mfg. Co.*, 180 Pa. 199, 201, 36 A. 735; *Breinig v. Allegheny Co.*, 332 Pa. 474, 478, 2 A. 2d 842. He may even use in a reasonable manner the surface of the street temporarily for purposes necessarily incident to the abutting land, e. g. storing building material: *Mallory v. Griffey*, 85 Pa. 275; *Piollet v. Simmers*, 106 Pa. 95. "Even where the State, by purchase or eminent domain, acquires a fee in the land upon which the highway rests, the abutting owner may prevent such unlawful uses of the street in front of his premises as amount to private nuisances, such as parking. But, the use of the highway by the public *for transit* is free from restriction by the abutting owner or others": *Breinig v. Allegheny Co.*, supra, p. 479. The abutting owner has also by the same authority (p. 481) the right of approach to his property subject to regulations by the state under its police powers. It is well settled here that the servitude imposed by the easement of public passage on city streets is necessarily greater than that imposed in the open country: *McDevitt v. People's Nat. Gas Co.*, 160 Pa. 367, 374, 28 A. 948; *Penna. R. R. Co. v. Montgomery Co. Pass. Ry.*, 167 Pa. 62, 70, 31 A. 468. At the same time the public has a paramount right to travel over a public highway.

In a congested district there is bound to be an interference between the rights of those who are lawfully

using the public highways and abutting owners just as there are between different travellers and between different abutting owners. It is due to these impacts that the state under its police power may regulate the use of highways in the interest of the whole public in so far as such regulations are not unreasonable or oppressive.

The advent of the automobile with its element of speed has added to the difficulties that are met in any attempt to maintain an orderly movement of traffic. The remarks of Mr. Justice McReynolds are peculiarly applicable where he said in *Frost v. R. R. Comm.*, 271 U. S. 583, 603, 46 S. Ct. 605, 610, 47 A. L. R. 457: "The states are now struggling with new and enormously difficult problems incident to the growth of automotive traffic, and we should carefully refrain from interference unless and until there is some real, direct and material infraction of rights guaranteed by the federal Constitution."

The first question that arises in solving the issue raised here is whether parking a motor vehicle on a public street is within the purposes of the public easement. Highways are primarily for travel. As Lord Ellenborough said in an early case, *Rex v. Cross*, 3 Camp. 224, 227: "No one can make a stable-yard of the King's highway." To paraphrase that statement as applied to the present day: "No one may make a public garage of a public highway." That, however, is not the situation here for today temporary and reasonable stops of motor cars are lawful incidents of travel. It would unduly interfere with convenient travel by motor car if one could not stop for a short interval for the accomplishment of the purpose or purposes of the trip. "Doubtless temporary and reasonable stops of automobiles on highways are lawful as an incident to travel": *In re Opinion of the Justices*, 297 Mass. 559, 8 N. E. 2d 179, 182. We have no doubt of the soundness of the conclusion that stops of reasonable length which do not interfere with traffic and are not contrary to established police regu-

lations are a reasonable use of public highways, when we note that the public easement has been held to include the right to lay sewer, gas, water and telegraph lines and street car tracks in city streets. Everyday experience demonstrates the accuracy of that statement. Assuming that such stops may overtax the capacity of streets most of which were laid out in a different age and that conflicts of rights are bound to arise, the state in the exercise of its police power may adopt reasonable regulations for the purpose of meeting the situation. It is that inherent power which the state has invoked here: *F-K Market House Co. v. Reading*, 310 Pa. 493, 165 A. 398. We deem it to be the law that the state has the same right to regulate parking that it has to limit the speed of automobiles, so long as the regulations are not oppressive or unreasonable.

The declared purpose of this act is not to promote parking but to limit parking in the interest of all travellers on the public highways. The recital of the purpose in the ordinance is not to be lightly set aside and must be treated as conclusive of the existence of the facts recited in the absence of strong evidence to the contrary: *In re Beechwood Ave.*, 194 Pa. 86, 45 A. 127; *Duquesne Light Co. v. Pittsburgh*, 251 Pa. 557, 97 A. 85; *American Baseball Club of Phila. v. Phila.*, 312 Pa. 311, 315, 167 A. 891; Statutory Construction Act of May 28, 1937, P. L. 1019, §54 (46 PS §554). There is no evidence to the contrary.

The state has delegated to municipalities its police power in such matters, which it has a right to do.[2] By §1103 of the Vehicle Code of May 1, 1929, P. L. 905 (75 PS §663) it is provided that "local authorities shall have power to provide by ordinance for the regulation of traffic by means of peace officers or official traffic signals on any portion of the highway where traffic is

---

[2] *Greene County v. Center Twp.*, 305 Pa. 79, 86-87, 157 A. 777; *Tranter v. Allegheny Co. Authority*, 316 Pa. 65, 74, 173 A. 289.

heavy or continuous, and may *regulate or prohibit parking, stopping or loading of vehicles.*" [Italics supplied.] Section 2403 of the Third Class City Law of June 23, 1931, P. L. 932 (53 PS 12198-2403 (17)) is sufficient authority for the placing of the parking meters on the sidewalks or curbs.

"If anything can be considered as settled under the decisions of our Pennsylvania courts it is that municipalities under the guise of a police regulation cannot impose a revenue tax": *Kittanning Boro. v. American Nat. Gas Co.,* 239 Pa. 210, 211, 86 A. 717. The city of Easton could not lawfully rent parking space on its public streets as a revenue measure, but that is not what has been done here. The council has undertaken to correct a serious interruption of traffic occasioned by parking cars in a congested district for unreasonable periods and in double rows and at the same time to furnish reasonable accommodations for the public who may have occasion to stop, and then to impose the cost of such regulation on those who make necessary the machinery and labor employed in correcting the conditions. The findings of the court show that the plan when put in operation was a success. "It is not necessarily an infringement of the rights of individuals in public ways to charge a small fee for some legitimate special use to defray the cost of the special service afforded": *In re Opinion of the Justices,* supra. "It has been recognized consistently by judicial authority that where it is necessary in the proper conduct of business that unusual demands be made on the city facilities, a reasonable charge may be made by the municipality to cover its actual expense in providing such special services. . . . In the broad sense every ordinance which requires the payment of money is a revenue producing measure, but the *primary purpose for ordinances* such as this under consideration *is the reimbursement of the city* for providing special services to the licensees. . . . Though we may suppose the ordinance was imposed to increase the revenue, this

does not invalidate it as a licensing ordinance if it clearly appears the city is seeking to compel the persons who cause expense to pay for it": *American Baseball Club of Phila. v Phila.*, supra, p. 314.

We do not deem the charge imposed by this ordinance to be in conflict with §723 of the Vehicle Code (75 PS §332).[3] The legislature by this section intended to prevent the imposition of taxes by municipal subdivisions for the general operation of motor vehicles. The fee charged here is not primarily for the operation of the vehicles but only as an aid to the enforcement of the time limit on parking. We find no interference between the ordinance and the statute.

The appellants further argue that the actual receipts arising from this ordinance are so far in excess of its own budgetary estimates of expenses as to compel the inference that the ordinance is strictly a revenue measure and therefore unlawful. "It is incumbent on the party who alleges the invalidity of an ordinance upon the ground of unreasonableness to aver and prove the facts that make it so: *Kittanning Boro. v. Nat. Gas Co.*, 26 Pa. Superior Ct. 355; *Kittanning Boro. v. Water Co.*, 35 Pa. Superior Ct. 174": *Kittanning Boro. v. American Nat. Gas Co.*, supra, p. 213. We agree with the court below that appellants failed to meet that burden. The receipts from the operations of the parking meters for the period between October 31, 1941, and April 13, 1942, were shown conclusively by stipulation. No stipulation was filed as to cost of operation and there is nothing in the record to show the actual expenditures during that period or any other date. Neither is there any evidence from which a reasonable estimate of the probable costs of the special service can be made. There was admitted in evidence a budgetary statement by the Director of Finance. This could not be construed even as an at-

---

[3] "No city, borough, incorporated town, township or county shall require or collect any registration or license fee or tax for any motor vehicle".

tempted estimate of expenses applicable here. However, it was shown by uncontradicted evidence that the budgetary statement was inaccurate as applied to the present controversy. For example, it charged the entire cost of installation of the meters in one year although they had a life of approximately five years. The police supervision as stated was shown not to reflect the true situation. No allowance was made for possible liability arising through negligence and, in any event, the measure of reasonableness of the charge is not the amount actually expended by the borough in a particular year, much less in part of a year: *Chester City v. W. U. Tel. Co,* 154 Pa. 464, 25 A. 1134; *Taylor Boro. v. Postal T. C. Co.,* 202 Pa. 583, 52 A. 128.

In matters of this character municipalities must be given reasonable latitude in fixing charges to cover anticipated expenses to be incurred. All doubt should be resolved in favor of the fairness of the charge: *Kittanning Boro. v. American Nat. Gas Co.,* supra, p. 215. At the same time the municipality must keep in mind at all times that it may not employ this device to raise general revenue under the guise of a police regulation. The appellants so far have failed to show that the municipality has done so.

We find no merit in assignments of error 26 to 29 inclusive. The gist of the complaints is the weight given to the conclusion of Professor Frank R. Hunt called as an expert. It is sufficient to say that the profit made in other cities was not shown to involve the same conditions as existed in Easton and was of no guide in determining the immediate question. Such expenditures are bound to vary with the size of the municipality, extent of traffic, congestion of a district and similar matters. None of the matters complained of in these assignments of error would have had any effect upon the result.

The decree entered in each of the four appeals is affirmed at the cost of the respective appellants.