STATE OF VERMONT *v.* KENNETH I. DOUGLAS.

·(94 A2d 403)

November Term, 1952.

Present: SHERBURNE, C. J., JEFFORDS, CLEARY, ADAMS and CUSHING, JJ.

Opinion Filed January 13, 1953.

*Black & Wilson* for the respondent.

*Robert W. Larrow,* Burlington City Attorney, for the State.

CLEARY, J. This is a prosecution for violation of an ordinance of the City of Burlington. The alleged offense occurred on June 19, 1951. The crime charged was parking an automobile on a public street in a metered zone after the time allowed by law had expired. The respondent pleaded not guilty. He also pleaded that the ordinance is *ultra vires* and the parking meter system, as actually operated by the city, is *ultra vires* and unconstitutional. He waived a jury trial. Hearing was had by the Chittenden municipal court. The evidence was uncontradicted that the respondent violated the ordinance as charged in the information. Findings of fact were made with a judgment of guilty and the respondent sentenced but sentence was stayed. The case is here on the respondent's exceptions to the failure to find as requested, to the findings as made, and to the judgment.

The following facts were found and no exceptions taken to them. The ordinance in question was enacted by the city council in 1946. At that time the city charter authorized the council to control and regulate the parking of vehicles on the public highways of the city. The new city charter of 1949 specifically authorized parking meters for the regulation of parking of vehicles. Sec. 12 of the ordinance is as follows : "The fees required by this ordinance are hereby levied as a police regulation and inspection fee.to cover the cost of providing parking meters and maintaining the same, allotting and marking parking spaces, providing regulation and control of traffic moving in and out of, and parking in, said parking spaces and the zones herein created, sweeping and cleaning the streets in said zones and clearing the same of snow, marking said streets and maintaining directional and other signs therein, and any and all other expense pertaining to policing, regulating, and controlling traffic in and adjacent to said areas."

Parking meters were installed by the city of Burlington in the fiscal year 1946-1947 and were finally paid for during 1948-1949. Until then the city received one-half of the revenue obtained from operation of the meters. On July 1, 1948 the city council voted that when the meters were paid for, three-fourths of the revenue should go to the police department and one-fourth to the street department. For the fiscal year 1949-1950 the gross revenue from the meters was $51,256.96, which was divided three-fourths

$38,442.72 to the police department and one-fourth $12,814.24 to the street department. For the fiscal year 1950-1951 the meter revenue was $55,728.81. It was appropriated as follows: meter repairs $2500, traffic signs $500, off street parking $5000, police department three-fourths of balance $35,796.63, street department one-fourth of balance $11,932.18. Monies transferred to the police department as its share of the parking meter income were treated just as other funds appropriated to the use of the police department and there was no segregation of the parking meter funds.

The respondent starts briefing his exceptions with Part III of his brief. His first four exceptions to the court's refusal to find as requested were waived. Exceptions numbered five to eight were to the failure of the court below to find that the city used a substantial portion of its parking meter revenue in the past several years for the general expenses of the street and police departments and has not used the parking meter revenue solely for the regulation of parking of vehicles as authorized by the city charter, and has not used the parking meter revenue only to finance the purchase and operation of meters, to maintain public parking areas, to control and regulate traffic, or any combination of these purposes as provided by No. 75 of the Public Acts of 1951. The requested findings were immaterial and the exceptions are of no avail for reasons which will appear later in this opinion.

Part IV of the respondent's brief asks only that we recognize that certain findings were rulings of law. We recognize them to be such. Part V considers other findings which involved the fiscal year 1951-1952, the year after the alleged offense occurred. The State conceded that we disregard these findings and that the provisions of No. 75 of the Public Acts of 1951 would not validate the present prosecution. So we are careful to point out that No. 75 of the Public Acts of 1951 is not in issue here and we are not considering that Act.

In Part VI of his brief the respondent maintains that the ordinance is void because it is *ultra vires*. He claims that the ordinance purports to permit revenue from parking meters to be used for purposes other than for the regulation of parking of vehicles and is thus on its face *ultra vires* and unauthorized; that the language of the ordinance is so broad as to permit parking meter revenues to be used for the general purposes of the police and street departments for the entire city of Burlington; that the ordinance is void because

it goes beyond the powers granted to the city and assumes power not authorized by the city charter; that the size of the appropriations made to the police and street departments and the completely arbitrary division of the parking meter revenues indicate that the ordinance provides for expenditure of parking meter revenues not incident to the regulation of traffic and parking but for the general purposes of the street and police departments.

He does not point out any language of the ordinance which is *ultra vires* and unauthorized, but apparently bases his claims on the provisions for snow clearance, erection of signs, marking of streets, "and any and all other expenses pertaining to policing, regulating and controlling traffic in and adjacent to said areas," contained in § 12 of the ordinance. These provisions are all reasonably connected with the regulation of the parking of vehicles. *In re Opinion of Justices,* 297 Mass 559, 8 NE2d 179, 182; *State ex rel Harkow* v. *McCarthy,* 126 Fla 433, 171 So 314, 316; *Wilhoit* v. *City of Springfield,* 237 Mo App 775, 171 SW2d 95, 100; *Ex parte Harrison,* 135 Tex Cr R 611, 615, 122 SW2d 314. The faults of which he complains are not to be found in the ordinance but in the disposition of the parking meter revenue by the city council and in its use by the police and street departments. The constitutional validity of the ordinance is to be tested, not by what has been done under it, but by what may rightfully, by its authority, be done. *Sargent* v. *Rutland R. Co.,* 86 Vt 328, 337, 85 A 654; 11 Am Jur 737 and 16 CJS 229 and cases there cited. When that test is applied the ordinance in question is neither *ultra vires* nor unauthorized.

In part VII of his brief the respondent argues that if the city charter is construed as authorizing the ordinance the charter is unconstitutional to that extent because the ordinance is in terms and effect a revenue measure; that the parking meter system as actually operated is *ultra vires* and unconstitutional because in effect it is a revenue measure; that a law not objectionable on its face may be adjudged unconstitutional because of effect in operation. He cites *Clark* v. *City of Burlington,* 101 Vt 391, 143 A 677 and *State* v. *Greaves,* 112 Vt 222, 22 A2d 497, in support of the last point. The Clark case involved the constitutionality of a tax statute. The only injurious operation claimed was that the law was unequal in its working within the class of taxpayers to which it applied. This claim was not sustained. The Greaves case was a Jehovah Witness

case, a prosecution for violation of a city ordinance requiring a peddler to obtain a license. The respondent raised constitutional questions of freedom of speech, press and worship. There the ordinance on its face authorized something that was unconstitutional. Here the respondent claims the ordinance is unconstitutional because it is in effect a general revenue raising scheme. He says that the police power to regulate traffic can justify the imposition of a fee or license only sufficient to meet the costs of the service performed. There are authorities which support his position but we do not adopt that view for the reasons hereinafter stated.

■■ It is a fundamental doctrine that every presumption is to be made in favor of the constitutionality of a statute, and it will not be declared unconstitutional without clear and irrefragable evidence that it infringes the paramount law. *McFeeters* v. *Parker,* 113 Vt 139, 144, 30 A2d 300, and cases there cited. Here the ordinance states that the parking fees which it requires to be paid are levied as a police regulation to cover the cost of regulating the parking of vehicles. The city charter authorizes such an ordinance. We cannot go beyond the declaration of purpose expressed in the ordinance in the absence of evidence tending to show that the declaration is a sham, and that the ordinance is, in reality, a revenue measure. *Kimmel* v. *Spokane,* 7 Wash2d 372, 109 P2d 1069.

■■ The power to regulate the use of streets and highways by restrictions on the parking of vehicles is one universally recognized, and its reasonable exercise is consistently upheld. The power is in the legislature and it may be delegated by it to its municipal subdivisions. Installation and maintenance of coin operated parking meters to control the parking of vehicles is a proper exercise of police powers and the fact that revenues are realized therefrom, even though they may be incidentally in excess of the costs of installation, operation, repair and supervision do not make the law unconstitutional. *Cassidy* v. *City of Waterbury,* 130 Conn 237, 33 A2d 142; *Opinion of the Justices,* 94 NH 501, 51 A2d 836.

The vital questions are whether the primary purpose of the ordinance was to regulate traffic and whether the revenue received by the city has some reasonable relation to the expense incurred for the parking of vehicles. The problem of automobile parking on the streets of our cities and villages is a serious one. The enormous growth of automobile traffic and the tremendous demand made upon

public streets for space in which to drive and park automobiles is a matter of common knowledge.

■■ The Burlington City Council undertook to correct the situation. The council could not be expected to foresee the amount of revenue that the parking meters would earn. It has and must have some right of experimentation. *Clark* v. *City of New Castle*, 32 Pa D & C 371, 383. Municipalities must be given reasonable latitude in fixing charges to cover anticipated expenses to be incurred. *Laubach & Sons* v. *City of Easton*, 347 Pa. 542, 32 A2d 881, 885. The fees charged must bear some reasonable relation to the cost of regulation. *Fosters, Inc.* v. *Boise City*, 63 Idaho 201, 118 P2d 721. If the fee or charge is exacted for the prime purpose of enabling municipal authorities to control the streets and regulate parking, such fee or charge is imposed in the exercise of the city's police power. *Wilhoit* v. *City of Springfield*, 237 Mo App 775, 171 SW2d 95, 101. In the broad sense every ordinance which requires the payment of money is a revenue producing measure but this does not invalidate it as a regulating ordinance if it clearly appears that the city is seeking to compel the persons who cause the expense to pay for it. *Laubach & Sons* v. *City of Easton*, 347 Pa 542, 32 A2d 881, 884.

Though the appropriations of parking meter revenue to the Burlington police and street departments prior to 1950 did not specify the purpose of use, a large part of the revenue was used for repairs of meters, painting of parking spaces, traffic signs and snow removal in the parking areas, and supervision of the parking areas. For the fiscal year 1950-1951, in addition to a large part of the revenue being used for these purposes, special appropriations were made for meter repairs and traffic signs, and $5,000 for off-street parking. The parking meter revenue has greatly increased since the meters were first installed but it cannot be said that it was contemplated that excessive revenue would result when the ordinance was adopted. *Bowers* v. *City of Muskegon*, 305 Mich 676, 9 NW2d 889.

■ There is nothing in the record to establish the fact that the purpose of the city was to raise revenue under the guise of a police regulation. *Owens* v. *Owens*, 193 SC 260 at 268, 8SE 339 at 341. On the contrary the record shows the purpose of the ordinance was to regulate parking of automobiles on the city streets and though the revenue exceeded the cost of operation it bore a reasonable rela-

tion to the expense incurred. We are satisfied and hold that the ordinance in question is not a revenue measure, that it is authorized by the charter and is neither *ultra vires* nor unconstitutional. This disposes of the respondent's claim that the city charter is unconstitutional to the extent that it authorizes the ordinance.

The respondent waived the last part of his brief which is numbered VIII.

*Exceptions overruled and judgment affirmed. Let execution be done.*