## Elizabeth DERBY

### v.

## TOWN OF HARTFORD.

### Civ. No. 83–107.

United States District Court,
D. Vermont.

Nov. 20, 1984.

Elliot M. Burg, South Royalton Legal Clinic, South Royalton, Vt., for plaintiff.

Anthony B. Lamb, Paul, Frank & Collins, Inc., Burlington, Vt., for defendant.

## MEMORANDUM OF DECISION

HOLDEN, Senior District Judge.

The plaintiff, Elizabeth Derby, has released her claim for compensatory damages but continues her action against the defendant, Town of Hartford, Vermont, pursuant to 42 U.S.C. § 1983 ("Section 1983") seeking a declaratory judgment that

the Town of Hartford's loitering ordinance is unconstitutional both on its face and as applied to the plaintiff.[1]

Both sides have moved for summary judgment on the constitutionality of the ordinance. For the reasons which follow, the court grants the plaintiff's motion for summary judgment. The defendant's motion for summary judgment must be denied.

### Background Facts

On May 18, 1982, the Town of Hartford's Board of Selectmen enacted a loitering ordinance, which is reproduced in the margin.[2]

It appears in the record that the Hartford ordinance was enacted to combat the problem of people "lingering" in front of downtown business establishments, causing store owners to complain. Deposition of Ralph W. Lehman, Town Manager, at 4–5. Police officers deposed in connection with this litigation reported complaints voiced by downtown merchants of abusive language, blocked sidewalks and scuffling, obscene language and littering, drug use,

1. Plaintiff's claims for injunctive relief and for monetary damages to redress her injuries allegedly caused by false arrest have been removed from the case.

On August 1, 1983, the parties filed a stipulation of dismissal of plaintiff's claims for money damages. This stipulation reads:

Counsel for the respective parties stipulate and agree that all plaintiff's claims for money damages based upon any of the legal theories set forth in her Complaint dated March 9, 1983, may be 'dismissed with prejudice', but without prejudice to the right of the plaintiff to pursue any remaining claims pertaining to the constitutionality of the Town of Hartford 'loitering' ordinance as such claim may be alleged by the aforementioned Complaint.

On August 3, 1983, the Honorable Jerome J. Niedermeier, United States Magistrate, recommended that the stipulation be approved. The court adopted the magistrate's recommendation on August 19, 1983.

At oral argument before the court on the cross-motions for summary judgment, counsel for plaintiff indicated that the claim for injunctive relief was no longer being pursued.

2.
### TOWN OF HARTFORD
### LOITERING ORDINANCE

BE IT ORDAINED by the Board of Selectmen of the Town of Hartford as follows:

SECTION 1. Loitering constitutes a public nuisance.

SECTION 2. Definitions. As used in this Ordinance:

(a) "Loitering" shall mean remaining idle in essentially one location and shall include the concept of spending time idly; to be dilatory; to linger; to stay; to saunter; to delay; to stand around and shall also include the colloquial expression "hanging around."

(b) "Public Place" shall mean any place to which the general public has access and a right to resort for business, entertainment, or other lawful purpose, but does not necessarily mean a place devoted solely to the uses of the public. It shall also include the front or immediate area of any store, shop, restaurant, tavern or other place of business and also public grounds, areas or parks.

SECTION 3. Loitering—Police order to disperse—Penalty.

(a) It shall be unlawful for any person to loiter, loaf, wander, stand or remain idle either alone and/or in consort with others in a public place in such manner so as to:

(1) Obstruct any public street, public highway, public sidewalk or any other public place or building by hindering or impeding or tending to hinder or impede the free and uninterrupted passage of vehicles, traffic or pedistrians [sic].

(2) Commit in or upon any public street, public highway, public sidewalk or any other public place or building any act or thing which is an obstruction or interference to the free and uninterrupted use of property or with any business lawfully conducted by anyone in or upon or facing or fronting on any such public street, public highway, public sidewalk or any other public place or building, all of which prevents the free and uninterrupted ingress, egress, and regress, therein, thereon and thereto.

(b) When any person causes or commits any of the conditions enumerated in Subsection (a) herein, a police officer or any law enforcement officer shall order that person to stop causing or committing such conditions and to move on and disperse. Any person who fails or refuses to obey such orders shall be guilty of a violation of the Ordinance.

(c) Any person who violates any of the provisions of this Ordinance shall be subject to a fine not exceeding 500.00 dollars or by imprisonment not exceeding 6 months. Any such violation shall constitute a separate offense on each successive day continued.

/signed/

BOARD OF SELECTMEN
TOWN OF HARTFORD, VERMONT

Adopted this 18th day of May, 1982, at Hartford, County of Windsor, State of Vermont. Filed and recorded in the Office of the Town Clerk of Hartford, on May 20, 1982 at 9:45 a.m., Town Records, Volume 23, Page 297.

and loud music after dark. Deposition of Michael Griffis, at 3–4; deposition of Henry Dupuis, at 7; deposition of Stephen Mairs, at 3. Yet the appearance of the troublemakers was of concern to the Selectmen as well.

An attempt to relocate these "lingerers" was unsuccessful, and complaints continued to mount. Finally, the challenged ordinance was adopted, aimed at the people that the downtown merchants disliked. Deposition of Jerome Gunsalus, at 56.

On the night of July 13, 1982, plaintiff left her apartment in White River Junction, Vermont to take a walk. Her doctor had recommended that she walk frequently as therapy for a health condition. On her walks, plaintiff would often stop to rest on account of shortness of breath and pain stemming from a hip injury. Early in the morning on July 14, 1982, plaintiff was resting on the steps of the First Interstate Bank in White River Junction.

Hartford Police Officer Jerome Gunsalus observed the plaintiff as she sat on the bank's steps. The officer considered the plaintiff to be violating the law because "[s]he remained in one place, was what she was doing. That constituted loitering." Deposition of Jerome Gunsalus, at 20. When Officer Gunsalus instructed the plaintiff to move on, she refused. At this point, Gunsalus radioed his shift supervisor, Sergeant Rielly. On his arrival, Officer Rielly warned plaintiff that "if she didn't move along she would be cited for loitering." *Id.* at 21. Again, plaintiff refused to move and was taken to the local police station. *Id.* at 21–22.

At defendant's police station, plaintiff was booked for loitering and was issued a citation. Subsequently, the charges against plaintiff were dropped by order of the Hartford Police Chief Guarino because

the 60-day waiting period had not passed before the ordinance became effective. Upon being advised that the citation was defective, Officer Gunsalus went to the plaintiff's residence, retrieved the citation and destroyed it. *Id.* at 39.

## Discussion
### Subject Matter Jurisdiction

Although neither party questions the court's jurisdiction to grant declaratory relief concerning the constitutionality of a local ordinance in the face of a stipulation of dismissal of plaintiff's claim for money damages, it is the court's duty to determine whether subject matter jurisdiction exists. *City of Kenosha v. Bruno*, 412 U.S. 507, 511, 93 S.Ct. 2222, 2225, 37 L.Ed.2d 109 (1973), citing *Louisville & Nashville Railroad Co. v. Mottley*, 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908).

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which provides a remedy in law or equity for deprivations of "any rights, privileges, or immunities secured by the Constitution and laws."[3] In 1978, the United States Supreme Court held that local governing bodies can be sued directly under Section 1983 for monetary, declaratory, or injunctive relief where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Department of Social Services*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978).

Pursuant to Article III of the U.S. Constitution, the jurisdictional issue to be decided is whether an actual case or controversy exists sufficient to confer subject matter jurisdiction on this court. More specifically, the issue is whether a genuine

---

**3.** The jurisdictional counterpart of 42 U.S.C. § 1983 is 28 U.S.C. § 1343. The applicable provision, § 1343(a)(3), is reproduced below.

   The district court shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

　　*　　*　　*　　*　　*　　*

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States. . . .

threat of enforcement exists under the loitering ordinance in question. The court finds some guidance in the case of *Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). There, the complainant and others were warned to stop distributing handbills on the sidewalk of a shopping center protesting American involvement in Vietnam. The complainant departed to avoid arrest. However, his companion continued and was arrested and charged with criminal trespass. The plaintiff and others instituted suit under Section 1983 for declaratory and injunctive relief claiming that Georgia's criminal trespass statute was being applied in violation of their constitutional rights. The district court dismissed the action finding no actual controversy. The United States Court of Appeals for the Fifth Circuit affirmed.

The Supreme Court reversed and remanded, holding that the case did present an actual controversy under Article III of the Constitution and under the Federal Declaratory Judgment Act. The Court found that the alleged threats of prosecution were not imaginary or speculative and that petitioner was not required to expose himself to actual arrest or prosecution in order to present a constitutional challenge to an enactment which he contends deters the exercise of his constitutional rights. *Steffel v. Thompson, supra*, 415 U.S. at 458–460, 94 S.Ct. at 1215–16. The Court remanded the case for consideration of whether the controversy remained substantial in light of the country's reduced involvement in the Vietnam War, which had been the target of the petitioners' handbills.

The Court's concluding statements are instructive:

> The solitary individual who suffers a deprivation of his constitutional rights is no less deserving of redress than one who suffers together with others.
>
> We therefore hold that, regardless of whether injunctive relief may be appropriate, federal declaratory relief is not precluded when no state prosecution is pending and a federal plaintiff demonstrates a genuine threat of enforcement of a disputed state criminal statute, whether an attack is made on the constitutionality of the statute on its face or as applied.

*Id.* at 474–75, 94 S.Ct. at 1223–24 (footnotes omitted). *See also Ellis v. Dyson*, 421 U.S. 426, 434, 95 S.Ct. 1691, 1696, 44 L.Ed.2d 274 (1975) ("A genuine threat must be demonstrated if a case or controversy, within the meaning of Art. III of the Constitution and of the Declaratory Judgment Act, may be said to exist").

The United States Supreme Court has frequently reiterated the basic test for determining the existence of an actual controversy sufficient to support the exercise of federal jurisdiction.

> Basically, the question in each case is whether ... there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

*Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941). *See also Lake Carriers' Assn. v. MacMullan*, 406 U.S. 498, 506, 92 S.Ct. 1749, 1755, 32 L.Ed.2d 257 (1972); *Evers v. Dwyer*, 358 U.S. 202, 203, 79 S.Ct. 178, 179, 3 L.Ed.2d 222 (1958) (per curiam).

■ Applying these principles to the *Derby* case leads to the conclusion that the court has jurisdiction to reach the merits of the plaintiff's complaint for declaratory relief. Plaintiff's affidavit in support of summary judgment states that since her arrest, she has been afraid to go out for walks for fear of being arrested or harassed by the police. Affidavit of Elizabeth Derby, at 1. The plaintiff asserts that she takes fewer walks, does not walk after dark, moves on if an officer comes by when she is resting, and otherwise attempts to seek rest when she is in the company of friends. *Id.* at 1–2. Plaintiff further asserts that in the future, she intends to engage in the conduct for which she was arrested on July 14, 1982 and for which she would have been

prosecuted had there not been a technical defect in the loitering ordinance.

The court finds that the plaintiff has altered her behavior due to the existence of the defendant's loitering ordinance out of fear of future arrests. It was not disputed at oral argument on the pending motions that the Hartford Police Department intends to enforce the loitering ordinance should the court rule in the defendant's favor. The court holds that an actual controversy exists sufficient to confer subject matter jurisdiction on the court. Accordingly, the constitutionality of the challenged ordinance must be confronted by the court.

*Merits*

By motion filed July 11, 1984, the plaintiff has moved the court for summary judgment on the grounds that the Hartford loitering ordinance challenged in this lawsuit is unconstitutionally vague and overbroad. Plaintiff requests that the court declare the ordinance unconstitutional and void.

In opposition, the defendant moves for summary judgment in its favor on the issue of facial constitutionality. In addition, defendant asserts that the issue of whether the ordinance was constitutionally applied presents a genuine issue of material fact which cannot be resolved by summary judgment.

The court begins from the basic premise that a legislative enactment is entitled to the presumption of constitutionality unless such an interpretation is plainly foreclosed by the language itself. *E.g., United States v. National Dairy Products Corp., et al.,* 372 U.S. 29, 33, 83 S.Ct. 594, 598, 9 L.Ed.2d 561 *reh'g denied,* 372 U.S. 961, 83 S.Ct. 1011, 10 L.Ed.2d 13 (1963); *State v. Pray,* 133 Vt. 537, 541, 346 A.2d 227 (1975); *State v. Douglas,* 117 Vt. 484, 489, 94 A.2d 403 (1953). The courts are called upon to seek an interpretation which supports the constitutionality of legislation. *United States v. National Dairy Products Corp., et al., supra; State v. Bartlett,* 128 Vt. 618, 621, 270 A.2d 168 (1970).

Plaintiff correctly asserts that courts generally impose a two-part test to determine whether a penal statute or ordinance withstands a vagueness challenge. The enactment must both "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender, et al. v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983).

In *Kolender,* the United States Supreme Court struck down, as unconstitutionally vague on its face, a California statute which required persons who loiter or wander to provide "credible and reliable" identification and to account for their presence when requested by a peace officer. In discussing the broad discretion invested in police officers under the California statute, Justice O'Connor wrote:

An individual, whom police may think is suspicious but do not have probable cause to believe has committed a crime, is entitled to continue to walk the public streets 'only at the whim of any police officer' who happens to stop that individual under [the statute] (quoting *Shuttlesworth v. City of Birmingham,* 382 U.S. 87, 90 [86 S.Ct. 211, 213, 15 L.Ed.2d 176] (1965)). Our concern here is based upon the 'potential for arbitrarily suppressing First Amendment liberties....' *Id.,* at 91 [86 S.Ct. at 213]. In addition, [the statute] implicates consideration of the constitutional right of freedom of movement.

*Id.,* 103 S.Ct. at 1859.

Commenting further on the element of police discretion, Justice O'Connor wrote:

It is clear that the full discretion accorded the police to determine whether the suspect has provided a "credible and reliable" identification necessarily "entrusts lawmaking to the moment-to-moment judgment of the policemen on the beat" (quoting *Gregory v. City of Chicago,* 394 U.S. 111, 120 [89 S.Ct. 946, 951, 22 L.Ed.2d 134] (1969) (Black, J., concurring)). [The statute] "furnishes a conve-

nient tool for harsh and discriminatory enforcement by local prosecuting officials, against particular groups deemed to merit their displeasure" (quoting *Thornhill v. Alabama,* 310 U.S. 88, 97–98, 60 S.Ct. 736, 741–42, 84 L.Ed. 1093 (1940)), and 'confers on police a virtually unrestrained power to arrest and charge persons with a violation' (quoting *Lewis v. City of New Orleans,* 415 U.S. 130, 135, 94 S.Ct. 970, 973, 39 L.Ed.2d 214 (1974) (Powell, J., concurring)).

*Id.*

While sympathetic to law enforcement's desire to curb crime, the Court cautioned:

> As weighty as this concern is, however, it cannot justify legislation that would otherwise fail to meet constitutional standards for definiteness and clarity.

*Id.*

■ Similarly, the defendant's ordinance suffers from the same infirmities struck down in *Kolender.* The language of the ordinance is so indefinite that persons "of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. General Construction Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926).

> This indefiniteness runs afoul of due process concepts which require that persons be given fair notice of what to avoid, and that the discretion of law enforcement officials, with the attendant dangers of arbitrary and discriminatory enforcement, be limited by explicit legislative standards.

L. Tribe, *American Constitutional Law* § 12–28, at 718 (1978) (footnotes omitted).

The case of *Grayned v. City of Rockford,* 408 U.S. 104, 110, 92 S.Ct. 2294, 2300, 33 L.Ed.2d 222 (1972), provides guiding principles for sources to be consulted by courts faced with a vagueness challenge. The court may consider: 1) the words of the ordinance itself, 2) interpretations the court has given to analogous statutes, and perhaps to some degree, 3) interpretations given the statute by those charged with enforcing it.

The defendant maintains that when the ordinance is read as a whole, the vagueness problem is cured. In this regard, defendant asserts that violation of the ordinance requires three things:

1) an obstruction in a public place;

2) a police warning; and

3) a subsequent failure to refrain from obstructing.

Plaintiff further challenges the language of Sections 3(a)(1) and (2), which criminalizes "hindering or impeding or tending to hinder or impede the free and uninterrupted passage of vehicles, traffic, or pedistrians [sic]."

Plaintiff's reliance on *United States Ex. Rel. Newsome v. Malcolm,* 492 F.2d 1166 (2d Cir.1974), *aff'd sub nom. Lefkowitz v. Newsome,* 420 U.S. 283, 95 S.Ct. 886, 43 L.Ed.2d 196 (1975), is well placed. In that case, the United States Court of Appeals for the Second Circuit discussed the constitutionality of New York's loitering statute.

> On its face, the statute discloses that "loiter[ing]" "remain[ing]" or "wander[ing]" in an unspecified place for an unspecified period of time without apparent reason can establish the first element of the offense. Surely a citizen who sought to conform his conduct to this provision would be unable to discern whether he risked criminal responsibility by taking a leisurely stroll, by sitting briefly on a park bench, or by seeking shelter from the elements in the doorway of a building.

*Id.* at 1172–73.

Similarly, the defendant's loitering ordinance possesses an uncertain time element. The court finds inherent vagueness in that there is no indication as to how long one can remain "idle in essentially one location" before that conduct constitutes loitering. Mere standing in one place for a matter of seconds would fall within the ordinance's broad terms. Defendant's assertion that the ordinance proscribes only obstructive conduct is belied by the language of the ordinance. Persons can be stopped for remaining idly in one place and, if they refuse to move along after a police

warning, they can be arrested for loitering. The similarities between the defective New York statute discussed above and defendant's ordinance are striking. As in *Newsome* and its predecessor, *Baggett v. Bullitt*, 377 U.S. 360, 373, 84 S.Ct. 1316, 1323, 12 L.Ed.2d 377 (1964), the challenged ordinance presents the "hazard of being prosecuted for knowing but guiltless behavior." The court is persuaded that the Hartford ordinance is unconstitutionally vague.

Finally, through deposition testimony of the enforcing officers, plaintiff demonstrates the large measure of discretion involved in the enforcement of this ordinance due to the lack of standards and guidelines in the ordinance. The confusion and wide divergence of opinion as to definitions of key terms in the Hartford ordinance by the enforcing officers make it abundantly clear that the ordinance fails to give adequate notice of proscribed conduct. Unguided discretion is entrusted to enforcing officers to decide whether a person is engaged in criminal conduct under the ordinance. Such discretion necessarily invites arbitrary and discriminatory treatment that cuts across established due process precepts. L. Tribe, *supra*, at 718.[4]

*Conclusion*

The plaintiff's motion for summary judgment will be granted. The Town of Hartford's loitering ordinance must be declared unconstitutionally void for vagueness. The defendant's motion for summary judgment is denied.

It is SO ORDERED.

---

**4.** Because the court finds the ordinance unconstitutionally vague on its face, the court finds it unnecessary to reach the plaintiff's other challenges to the ordinance.