Kurt R. WIEMERSLAGE, through his Natural Guardian, Frank R. WIEMERSLAGE, Plaintiff,

v.

MAINE TOWNSHIP HIGH SCHOOL DISTRICT 207, the Board of Education of Maine Township High School District 207, James L. Elliott, Superintendent of Maine Township High School District 207, Thomas J. Cachur, Principal of Maine Township High School South, Judy Bovenmyer, Dean of Students of Maine Township High School South, Officer Thomas Swoboda, Security Officer at Maine Township High School South, John Doe and Jane Doe, Defendants.

No. 93 C 244.

United States District Court, N.D. Illinois, E.D.

June 11, 1993.

Keith J. Kulie, Addison, IL, for plaintiff.

Lee P. Schafer, Seyfarth, Shaw, Fairweather & Geraldson, David Lincoln Ader, Robert K. Bush, Thomas George · DiCianni, Jennifer Ann Pritz, Ancel, Glink, Diamond, Cope & Bush, Chicago, IL, for defendants.

## OPINION AND ORDER

NORGLE, District Judge:

Before the court is defendants' motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For reasons stated below, the motion is granted.

### FACTS

On September 23, 1992, after classes let out at roughly 3:05 p.m., plaintiff Kurt Wiemerslage ("Wiemerslage"), a high school freshman, exited Maine Township High School South and for a short period of time stood with a friend in an area immediately adjacent to the school that is commonly referred to as the Hamlin Gate Area, an entrance and exit area located near the fieldhouse on the east side of the school's campus. Wiemerslage stood on the public sidewalk, outside of the school property, and waited as two other students joined him. The group congregated for a brief time, discussing their immediate plans, when defendant Officer Thomas Swoboda ("Swoboda") approached them.

Swoboda, a security officer retained by defendant Maine Township High School District 207, had observed the four students on the public way. The officer, after taking their names and other information, reported this activity to the school's superintendent, indicating that the students were loitering near a garage located halfway between Hamlin Avenue and Home Avenue. He cited them for violating the school's disciplinary rule against loitering in the Hamlin Gate Area.

The Maine Township High School District 207's manual outlining disciplinary procedures states, "Students are not permitted in off-limits areas at any time. The designation of these areas will be presented to students by the school administration." In August, 1992, defendant principal Thomas J. Cachur ("principal Cachur") sent a letter to parents which stated that "the Hamlin Gate area continues to be designated as an off-limits area." The letter continued, "While students can use this area to enter or leave the school campus before and after school, loitering is not permitted in this area. A three-day sus-

pension will be given to any student who is present in this area." The Hamlin Gate Area was placed off limits to students because community members in the area had complained about students' lack of respect for their property and disregard for traffic safety regulations.

The next day, defendant Judy Bovenmyer ("dean Bovenmyer"), the Dean of Students at the high school, advised Wiemerslage that he was observed in violation of the loitering rule. Dean Bovenmyer informed Wiemerslage that he was to be suspended from school for three days for loitering in the Hamlin Gate Area and advised his parents of the incident, the discussion, and the suspension. Wiemerslage's parents later met with dean Bovenmyer to review the matter after receiving the notification letter from her. A second informal hearing was also conducted, this time with principal Cachur. Following the second hearing, Wiemerslage's father requested a formal hearing into the suspension and in October 1992 a formal hearing was conducted. After the formal hearing, Wiemerslage's parents were notified that the Board of Education of Maine Township High School District 207 let the suspension stand.

Wiemerslage filed a single count complaint alleging that the defendants violated his rights to free speech and assembly under the first amendment, applicable through the fourteenth amendment, and also that the school's loitering rule violates due process under the fourteenth amendment. Wiemerslage claims in conclusory fashion that the defendants' aforementioned acts violated his right to exercise freedom of speech and assembly, and that defendants collectively acted with the intent of depriving Wiemerslage of these first amendment rights. Further, Wiemerslage maintains the disciplinary rule impermissibly controls the non-academic actions of school students on a public way beyond the boundaries of school property, is unconstitutionally vague on its face and as applied to his conduct, and fails to provide any procedural guidelines assuring prompt judicial review of a suspension.

## DISCUSSION

■ On a motion to dismiss, the court accepts all well-pleaded factual allegations as true, as well as all reasonable inferences drawn from those allegations. *Mid America Title Co. v. Kirk,* 991 F.2d 417 (7th Cir.1993). Because federal courts simply require "notice pleading," *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* —— U.S. ——, ——, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993), this court construes pleadings liberally. *See Powell Duffryn Terminals, Inc. v. CJR Processing, Inc.,* 808 F.Supp. 652, 654 & n. 1, 655–56 (N.D.Ill. 1992). A complaint need not specify the correct legal theory nor point to the right statute to survive a motion to dismiss. *Tolle v. Carroll Touch, Inc.,* 977 F.2d 1129, 1134–35 (7th Cir.1992) (citing *Bartholet v. Reishauer A.G.,* 953 F.2d 1073, 1078 (7th Cir. 1992)). Additionally, mere vagueness or lack of detail alone is not sufficient to justify a dismissal. *Strauss v. City of Chicago,* 760 F.2d 765, 767 (7th Cir.1985). Accordingly, a party fails to state a claim upon which relief may be granted only if that party can prove no set of facts upon which to grant legal relief. *Ross v. Creighton Univ.,* 957 F.2d 410, 413 (7th Cir.1992).

■ Federal judicial intervention in the day to day operations of public schools is highly undesirable and requires significant restraint. Federal courts must not "intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values." *Epperson v. Arkansas,* 393 U.S. 97, 104, 89 S.Ct. 266, 270, 21 L.Ed.2d 228 (1968). The court will consider the complaint with these principles in mind.

■ The primary challenge Wiemerslage mounts against the disciplinary rule disallowing loitering in the Hamlin Gate Area is that of vagueness. The vagueness doctrine guarantees that legal prohibitions will be clearly defined. *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972). If people of common intelligence must guess at an enactment's meaning and differ as to its application, the law is unconstitutionally vague and is void. *Hynes v. Oradell,* 425 U.S. 610, 620–22, 96 S.Ct. 1755, 1760–62, 48 L.Ed.2d 243

(1976). Accordingly, an enactment must define the prohibited conduct with sufficient definiteness such that an ordinary individual understands just what conduct is prohibited and must define the prohibited conduct in a manner discouraging arbitrary and discriminatory enforcement. *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983); *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972); *Derby v. Town of Hartford*, 599 F.Supp. 130, 134 (D.Vt.1984).

■ The court recognizes the potential vagueness of the word "loitering" and also the failure of the disciplinary rule to provide a definition that would cast the word in narrow terms.[1] Notwithstanding these concerns, vagueness considerations do not apply equally in all situations; the degree of clarity required of an enactment depends on the nature of the enactment. *Village of Hoffman Estates v. Flipside Hoffman Estates, Inc.*, 455 U.S. 489, 498–99, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982); *Waldron*, 723 F.2d at 1358 (Swygert, S.J., dissenting). Appropriately, school disciplinary regulations need not be drawn with the same precision of a criminal statute. *Linwood v. Board of*

*Education*, 463 F.2d 763, 767 (7th Cir.), cert. denied, 409 U.S. 1027, 93 S.Ct. 475, 34 L.Ed.2d 320 (1972); *Soglin v. Kauffman*, 418 F.2d 163, 168 (7th Cir.1969); see also *Shamloo v. Mississippi State Bd. of Trustees*, 620 F.2d 516, 521–22 (5th Cir.1980). The special needs of the school system warrant a broader sweep in school regulations than might be permissible in a criminal code. Further, the management of school affairs is left largely to the discretion of school boards. *Board of Educ. v. Pico*, 457 U.S. 853, 863–64, 102 S.Ct. 2799, 2806–07, 73 L.Ed.2d 435 (1982). This court, therefore, does not consider a school disciplinary policy void for vagueness merely because the meaning of a term of the policy is understood by reference to definable sources other than a school manual or the rule itself. *Accord Bull v. Dardanelle Public School Dist. No. 15*, 745 F.Supp. 1455, 1462 (E.D.Ark.1990).

■ The disciplinary rule prohibiting loitering in the Hamlin Gate Area gives parents and students a clear and specific explanation of the prohibited conduct. The August 1992 letter makes it plain that students may pass through this area to and from school but may not pause to congregate. At a minimum,

1. Various courts have had, on numerous occasions, the opportunity to address vagueness and overbreadth concerns of anti-loitering and similar statutes and ordinances. *See, e.g., Kolender*, 461 U.S. at 358, 103 S.Ct. at 1858 ("credible and reliable identification" requirement of loitering and wandering statute found vague); *Hynes*, 425 U.S. at 620, 96 S.Ct. at 1760 ("recognized cause," notification, and identification elements of canvassing and solicitation ordinance unconstitutionally vague) *Papachristou*, 405 U.S. at 162, 92 S.Ct. at 843 (vagrancy statute including terms such as "rogues," "vagabonds," "drunkards," "night walkers," "persons wandering or strolling around from place to place without any lawful purpose," and "habitual loafers" unconstitutionally vague); *Fields v. City of Omaha*, 810 F.2d 830, 832–34 (8th Cir.1987) (identification and explanation requirement of loitering and prowling ordinance unconstitutionally vague); *Waldron v. McAtee*, 723 F.2d 1348, 1358 (7th Cir.1983) (Swygert, S.J., dissenting) (dissenting judge found anti-loitering ordinance unconstitutionally vague; majority abstained from decision); *Sawyer v. Sandstrom*, 615 F.2d 311, 318 (5th Cir.1980) (loitering statute overbroad because it punished essentially innocent association in violation of first amendment associational rights); *United States ex rel. Newsome v. Malcolm*, 492 F.2d 1166, 1172–73 (2d Cir.1974) (loi-

tering statute unconstitutionally vague because its prohibitions are cast in imprecise terms), aff'd, 420 U.S. 283, 95 S.Ct. 886, 43 L.Ed.2d 196 (1975); *Pottinger v. City of Miami*, 810 F.Supp. 1551, 1575–76 & n. 33 (S.D.Fla.1992) (although not reaching question of whether loitering ordinance was facially vague, noted other decisions finding such laws unconstitutionally vague); *Derby*, 599 F.Supp. at 135 (loitering ordinance unconstitutionally vague); *but see Kreimer v. Bureau of Police*, 958 F.2d 1242, 1267 (3d Cir.1992) (public library's rules regarding use of library and behavior—including one prohibiting loitering in library—not vague); *McSherry v. Block*, 880 F.2d 1049, 1055 (9th Cir.1989) ("loitering," interpreted by state as meaning lingering about schools and public places for the purpose or with the intent of effectuating some criminal act, not vague), cert. denied, — U.S. ——, 111 S.Ct. 1404, 113 L.Ed.2d 459 (1991); *Broussard v. School Board of City of Norfolk*, 801 F.Supp. 1526, 1532 (E.D.Va.1992) (school disciplinary rule prohibiting conduct that will "cause a disruption, disturb, or interrupt any school activity" not vague); *People v. Hirst*, 31 Cal.App.3d 75, 106 Cal.Rptr. 815, 819 (1973) ("loiter" defined as "to delay, to linger, or to idle about any such school or public place without a lawful purpose for being present" held not unconstitutionally vague).

"loiter" means "to delay ... with aimless idle stops and pauses" and "to remain in an area for no obvious reason." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 703 (1986). It also is defined as "to linger aimlessly or as if aimlessly in or about a place," "to move in a slow, idle manner; make purposeless stops in the course of a[n] ... errand," "to waste time ...," and "to pass (time) in an idle or aimless manner...." WEBSTER'S ENCYCLOPEDIC UN-ABRIDGED DICTIONARY OF THE ENGLISH LANGUAGE 843 (1989). These simple dictionary definitions of loitering are sufficiently clear to place an average student on notice of what conduct is prohibited.

■. Moreover, like the ordinance in *Grayned,* the high school's loitering rule is written specifically for the school context where the prohibited conduct is easily measured against the normal activities of the school. *Grayned,* 408 U.S. at 112, 92 S.Ct. at 2301. It cannot be said that the school does not maintain an important interest in students' affairs during their ingress or egress to and from school property. Further, the school may properly protect the property rights of those living in the surrounding homes by exercising its power *in loco parentis* to guide student behavior in such a way as to avoid vandalism or harm to the students. Schools are saddled with a vital responsibility to transmit community values and to promote respect for authority as well as for social, moral, or political values. *Pico,* 457 U.S. at 864, 102 S.Ct. at 2806. The scope of school officials' management of student conduct is "comprehensive." *Tinker v. Des Moines Independent Community School Dist.,* 393 U.S. 503, 507, 89 S.Ct. 733, 736, 21 L.Ed.2d 731 (1969). Moreover, the loitering rule is crafted to apply to a specified area and does not merely prevent loitering on the public streets in general. Given the particular school context of the loitering rule, the disciplinary rule gives fair notice to those to whom it is directed and clearly delineates its reach in terms of common understanding. *Grayned,* 408 U.S. at 112, 92 S.Ct. at 2301.

■ Wiemerslage attacks the use of the phrase "Hamlin Gate Area." Although conceding that it is common knowledge within the school population that the Hamlin Gate is the particular fence gate that is situated adjacent to the public street known as "Hamlin Avenue," Wiemerslage questions whether the area covered by the disciplinary rule extends to the fence-gate proper or for some distance beyond the fence away from the school property. The court does not find the term troubling. "Condemned to the use of words, we can never expect mathematical certainty from our language." *Id.* at 110, 92 S.Ct. at 2300. "[T]he fertile legal 'imagination can conjure up hypothetical cases in which the meaning of [disputed] terms will be in nice question.'" *Id.* at 110, n. 15, 92 S.Ct. at 2300 n. 15 (quoting *American Communications Ass'n v. Douds,* 339 U.S. 382, 412, 70 S.Ct. 674, 691, 94 L.Ed. 925 (1950)). The Supreme Court has held that the term "near the courthouse" is not unconstitutionally vague, *Cox v. Louisiana,* 379 U.S. 559, 568–69, 85 S.Ct. 476, 482–83, 13 L.Ed.2d 487 (1965), and has upheld a statute prohibiting picketing "in such a manner as to obstruct or unreasonably interfere with free ingress or egress to and from" a courthouse as not unconstitutionally vague. *Cameron v. Johnson,* 390 U.S. 611, 616, 88 S.Ct. 1335, 1338, 20 L.Ed.2d 182 (1968). Similarly, "Hamlin Gate Area" is not vague.

■ The concern that the loitering rule places unfettered discretion in the hands of school officials is tenuous. School officials are afforded broad discretion in enforcement of school codes because of the important interests and responsibilities affiliated with school administration. *Pico,* 457 U.S. at 863–64, 102 S.Ct. at 2806–07. There are no specific standards governing the exercise of the discretion granted school officials by the loitering rule, but the disciplinary rule does not permit or encourage arbitrary and discriminatory enforcement. All students found lingering, idling, or lolling in the Hamlin Gate Area are subject to the rule; and like the word "near" in *Cox,* the disciplinary rule allows for proper administrative discretion in the limited control of the areas in the immediate vicinity of the school. *See Cox,* 379 U.S. at 569, 85 S.Ct. at 483. The students' common understanding of the Hamlin Gate Area provides ample notice that they are not to remain in this area for any period of time

longer than is necessary to enter or exit the school and proceed to their destinations.

■ The court now turns to Wiemerslage's procedural due process challenge: that the loitering disciplinary rule fails to provide for judicial review. The complaint reveals that Wiemerslage and his parents received formal notice of the charges and obtained two informal hearings and one formal hearing into the matter. The formal hearing allowed for the presence of an attorney. Wiemerslage has received more process than was due a three-day suspension. *Linwood*, 463 F.2d at 768–69 (students may be suspended for seven days or less without hearing); *see also Goss v. Lopez*, 419 U.S. 565, 583, 95 S.Ct. 729, 740, 42 L.Ed.2d 725 (1975) (due process does not mandate that hearings in connection with short suspensions must require counsel, cross-examination, or calling of witnesses); *Broussard·v. School Board of City of Norfolk*, 801 F.Supp. 1526, 1532 (E.D.Va.1992) (plaintiff supplied more than constitutionally mandated procedures for one-day suspension by receiving notice and opportunity to rebut school's findings).

> To impose in each such case even truncated trial-type procedures might well overwhelm administrative facilities in many places and, by diverting resources, cost more than it would save in educational effectiveness. Moreover, further formalizing the suspension process and escalating its formality and adversary nature may not only make it too costly as a regular disciplinary tool but also destroy its effectiveness as part of the teaching process.

*Goss*, 419 U.S. at 583, 95 S.Ct. at 740. As such, Wiemerslage's claim that judicial review is required for this suspension fails.

■ Turning to Wiemerslage's free speech and assembly challenge, the court can summarily dispose of the issue. Wiemerslage does not allege the loitering rule is specifically aimed at regulating the content of speech nor does he successfully allege that the rule was enforced in his case to suppress a particular message he was attempting to promulgate. The complaint reveals that Wiemerslage and his friends were not assembled to protest, demonstrate, march, parade,

or rally, but were instead speaking of upcoming recreation. The court recognizes that "personal intercommunication among the students" may enjoy limited protection. *Tinker*, 393 U.S. at 512, 89 S.Ct. at 739. In any event, schools can place reasonable regulations on the time, place, or manner of students' exercise of first amendment rights when school activities are implicated. *Grayned*, 408 U.S. at 115, 92 S.Ct. at 2302–03. Given the discretion afforded school administrators and their limited control over the ingress and egress of students from school property, the prohibition against loitering in the Hamlin Gate Area is reasonable. It is apparent from the complaint that the school authorities determined that loitering at the gate interferes with the safe and orderly passage of students to and from the school grounds. As the August 1992 letter also indicates, school authorities could reasonably forecast that the property rights of neighbors may be disrupted in light of the complaints.

■ Rather than a work of painstaking particularity, the language of the loitering disciplinary rule is indeed flexible and broad. But flexibility and reasonable breadth are acceptable as long as it is clear what the rule as a whole prohibits. *See Grayned*, 408 U.S. at 111, 92 S.Ct. at 2300. The loitering rule delineates with sufficient clarity the conduct prohibited by the school officials and thus gives fair notice to students that they are not to stand in the Hamlin Gate Area but are to proceed through it. The suspension, furthermore, was accomplished through the appropriate procedures, and Wiemerslage fails to allege a violation of his first amendment rights to free speech or assembly.

## CONCLUSION

The court grants the defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) for the reasons discussed above.

IT IS SO ORDERED.